MARY J. KING, plaintiff in error, vs. JOSHUA A. KING, defendant in error.

The discretion of the Judge of the Superior Court granting a new trial will not be controlled unless abused. (R.)

Where a bill was seeking to pursue a trust fund which had been paid by K. to M., the attorney, by him to F., the trustee for complainant, and by him had been turned over to G., his successor, said fund being in Confederate money; and the questions in controversy were whether all or either of the parties who had received the Confederate money, had done so in bad faith, so as to make them all or any of them liable to complainant, it was error to dismiss the defendants, F. and H. the administrator of G., as not being proper parties. (R.)

Where the fact that complainant went to Rome to receive the Confederate money was proven, her reasons stated at the time for her act should have been received as part of the *res gestœ*. (R.)

New trial. Evidence. Declaration. Fraud. Trust. Parties. Before Judge PARROTT. Floyd Superior Court. January Term, 1872.

Mary Jane King filed her bill against Joshua King, Daniel R. Mitchell, William Franklin and Henry A. Gartrell, containing substantially the following allegations; That in the year 1849 she was married to the defendant, Joshua King, and had by him two daughters, both now living, the eldest, Beatrice, aged sixteen years, and the youngest, Ida, aged twelve years; that during the coverture the defendant, King, received into his possession property to the value of $8,000, inherited by complainant from her father and her sister; that complainant was divorced from her said husband on July 6th, 1863; that some time prior to the institution of said suit for divorce complainant and her said husband entered into an agreement of separation, by virtue of which said King was to hold the sum of $4,300, as trustee for complainant, and her said two minor children, and to pay over to complainant semi-annually the interest on the said sum, retaining the *corpus* undiminished for said children after the death of complainant; that said defendant soon after the aforesaid separation failed to pay the interest as contracted; that com-

King *vs.* King.

plainant employed the defendant, Daniel R. Mitchell, as her attorney to collect said unpaid interest, expressly instructing him to sue for nothing beyond the interest as she wished the principal sum to remain in said King's hands according to the terms of the articles of separation; that said Mitchell, contrary to said instructions, had the defendant, Franklin, appoint-trustee for complainant, and on July 6th, 1863, in the name of said Franklin, in Floyd Superior Court, recovered a judgment against the defendant, King, for the sum of $4,300, expressed to be in full of all alimony; that when complainant heard that judgment had been recovered as aforesaid, she expressly notified said defendants, Mitchell and Franklin, not to receive Confederate money in payment of the same; that about six months after the date of said judgment, said Mitchell, combining with said King, informed complainant that if she and her said trustee refused to receive Confederate money, the military authorities of the Confederate States would compel them by force; that thus misled and frightened, complainant consented, and on January 1st, 1864, said judgment was paid off to said Franklin in Confederate money, then worth only five cents in the dollar; that on January 30th, 1864, said Franklin turned over said Confederate money to the defendant, Gartrell, who had been appointed trustee for complainant in his place; that said Gartrell has converted said trust fund to his own use, never having paid to complainant principal or interest beyond the sum of $75; that said King is liable to pay said $4,300, with interest on the same, less the value of said Confederate money payment; that said Franklin is liable for any depreciation of said funds whilst in his hands, which he could have prevented; that said Gartrell is liable for the value of the funds received by him; that if the said King is held discharged from liability by said Confederate money payment, then said Mitchell is liable to complainant and her minor children, by reason of the aforesaid false and fraudulent representations and threats; prayer for discovery, relief and the writ of subpoena.

Complainant subsequently amended her bill substantially as follows, to-wit: That by the last agreement between complainant and the defendant, King, the defendant, Franklin, was mutually selected as trustee for complainant, said Franklin accepting the trust on February 11th, 1861; that on March 1st, 1861, said King delivered to said trustee his note for $4,300, due twelve months after date, indorsed by Samuel T. King, and three other notes for the interest to become due on said sum for the first twelve months; that said defendant, King, in order to pay off said notes in a depreciated and worthless currency, with a view to that end, in the year 1862, refused to pay either principal or interest, and procured the said indorser to notify the said trustee to sue to prevent the discharge of said indorser; that said note for $4,300 was delivered to the defendant, Mitchell, for suit in accordance with the terms of said notice; that said King and Mitchell entered into a fraudulent agreement, by which said King contracted to confess judgment on said suit if said Mitchell would receive Confederate money in payment of the same; that in accordance with said agreement, without any authority whatever, said Mitchell, on July 10th, 1863, did receive Confederate money in payment of said judgment, principal and interest; prayer, that the pretended discharge of said King, by reason of said payment, given by the said Mitchell and Franklin, be set aside. The defendant, Gartrell, having died pending suit, his administrator, Robert T. Hargrove, was made a party. Upon demurrer filed, the bill was dismissed as to the defendants, Franklin and Hargrove, and complainant excepted. The defendant King answered the bill substantially as follows: That defendant only received, by virtue of his marriage with complainant, the sum of $3,008.60⅔; that the two agreements made in connection with the separation of complainant and defendant are hereto annexed, marked Exhibits A. and B.; that defendant cannot know what instructions were given by complainant to her attorney, Mitchell, but defendant does know that three suits

King *vs.* King.

were commenced against him by said Mitchell upon his said notes, judgments recovered and paid off by this defendant; that the charge is á strange one, that defendant combined with said Mitchell to defraud his own children, in view of the fact that defendant has always supported, and is now supporting and educating them, intending to advance them in life as far as his means will allow.

In answer to the first interrogatory, defendant says, that the entire amount of property received by him through complainant from her father's and her sister's estate, was $3,-007.60⅔.

In answer to the second, that the agreements hereto annexed show that all negotiations and understandings were superseded and canceled by the second.

In answer to the third, that he knows nothing of complainant's instructions to her attorney; that there was no understanding between Mitchell and defendant about what money was to be paid, the confession of judgment being made to save costs and to get rid of the suits as soon as possible.

In answer to the fourth, that he paid to Daniel R. Mitchell, complainant's attorney, in July, 1863, the principal and interest of said judgments amounting to about $4,525.75; that defendant knows nothing about what was said or done by Mitchell to induce complainant to receive Confederate money; that defendant was most desirous of turning over property in payment of said claim before suit was brought, and so notified the parties, and offered to turn over property at a gold valuation, but contrary to said proposition, very much against this defendant's protestation and very much to his damage and injury, he was sued for the money which forced him to sacrifice property and means more than sufficient at a gold valuation than to pay said debt.

(EXHIBIT A.)

"GEORGIA—FLOYD COUNTY:

"The following is the basis of a settlement agreed upon by and between Joshua King and his wife, Mary J. King, to-

wit: They hereby agree to separate and to grant each a divorce, or allow each to obtain a divorce, agreeing each to the other that they will set up no defense to a suit for such divorce.

"The said King hereby agrees to settle absolutely on said Mary J. King, $3,500, to be paid to her the day, or as soon as both are lawfully divorced, a *vinculo matrimonii*. The said Joshua King further agrees to settle upon his three children by said Mary, $3,000, to be left in trust absolutely to them, and in the event that all three of said children should die previous to the death of said Mary J. King, then and in that event, $1,500 of said $3,000 to go to said Mary J. King. It is agreed that said Mary J. King is to retain and keep the youngest named, Bertha, and that said Joshua King is to keep and maintain the two eldest, Beatrice and Ida, said King to pay all reasonable expenses for the maintenance of all their children and said Mary up to the time of divorce, and to pay Judge A. R. Wright and D. S. Printup each $100, as attorneys, for services in making the settlement and procuring the divorce. The said Joshua King is to pay, from the time the said divorces are obtained, the interest on the $1,000 of the $3,000 settled in trust on his children, to said Mary King, for the support of the said youngest child, which said Mary J. King retains, said amount of interest to be $70, to be paid annually. The said King to be appointed the trustee for said children by giving and entering into bond and security for the same. Agreed to, as witness our hands and seals, this the 21st day of July, 1860

(Signed)    "JOSHUA KING, [L.S.]<br>"MARY J. KING, [L.S.]"

(EXHIBIT B.)

"ROME, 9th of February, 1861.

"Mrs. Mary J. King submits the following propositions, to-wit:

"1st. William D. Franklin will be selected for her trus-

tee; if he refuses to accept, she will select some reliable person except Dr. John S. Hughes and Henry Dobson.

"2d. Dr. King will convey to her trustee $4,300 in property, the property to be agreed upon and the price thereof by said trustee and King, and upon failure to agree as to the property and price, Dr. King will secure the payment of the $4,300 in cash to said trustee, with interest thereon from the date or from the time he failed to pay the $25 alimony in pursuance of Judge Hammond's order, which was revoked at last Court. The property or money, as the case may be, to vested in said trustee during the natural life of Mrs. King, and at her death to go to and be the absolute property of her three children by said King. The rents, issues and profits of said property, or the interest on said money, to go and be for the absolute use and benefit of Mrs. King during her natural life, for her individual support, maintenance, and be so applied by her trustee.

"3d. Dr. King to support, maintain and educate their three children at his individual expense, the youngest one to remain with Mrs. King until it is seven years old, she supporting and clothing said child until that time, Dr. King paying her trustee, for her, $100 per annum.

"4th. Dr. King to pay the entire costs of the suits, and pay to D. R. Mitchell $100 for his fees as Mrs. King's attorney.          (Signed)

"D. R. MITCHELL,
" Attorney for Mrs. King.

"MARY J. KING."

" This proposition accepted and agreed to by me, this 9th of February, 1861.          (Signed)

"JOSHUA KING.

Attest:

"THOMAS J. WORD,
" JESSE LAMBERTH, Ordinary."

The answer of the defendant, King, to the amendment to complainant's bill denied all the material allegations therein contained.

The defendant, Mitchell, answered the bill, substantially, as follows: That he knew nothing of any deed of separation entered into between complainant and her husband prior to the suit for divorce; that the contract of February 9th, 1861, was brought about through the negotiations of defendant; that the selection of the defendant, Franklin, as trustee for complainant, was made entirely independently of defendant, as he had, at that time, no acquaintance whatever with said Franklin; that, on February 11th, 1861, said Franklin came to the office of defendant, in the city of Rome, and stated that he had consented to become the trustee of complainant, who was his cousin; that, some time thereafter, said Franklin again called on defendant and informed him that he (said Franklin) and said Joshua King had not agreed on the price of the property, to be taken in payment of said $4,300, and that rather than allow the prices demanded by said King for some negroes, he had, after consultation with complainant, determined to take the money; that defendant heard nothing further from said Franklin until he brought to him the original, of which the following instrument is a copy:

"GEORGIA—FLOYD COUNTY:

"*To William D. Franklin, Trustee for Mary J. King:* You are hereby notified that I shall hereafter refuse to pay the interest, or any part of the principal of the note for $4,300, given for the use of Mary J. King, the consideration thereof having entirely failed. The said Mary J. King having entirely failed to comply with the agreement and understanding had at the time; and, further, she having taken possession of a large portion of the property, which was understood was to be turned over to her in lieu of said note, and the balance is now ready to be turned over at a fair valuation, and I am willing and ready to comply in turning over

the property, according to said agreement. February 15th, 1862.        (Signed)

"JOSHUA KING."

That Franklin stated that he had made no arrangement with said King, further than to take his note for $4,300; that if complainant had made any other arrangement with said King, he knew nothing of it, and that he knew of no other remedy than to sue the note and collect the money; that defendant advised said Franklin to bring suit on the note and collect the money, in order that he might hold the same subject to his control; that defendant sued said note to the July Term, 1862, of Floyd ‚Superior Court, and obtained judgment at the July Term, 1863; that, at the judgment term, the defendant, King, asked him if he would take Confederate money in payment of said indebtedness, to which defendant replied that he would, unless instructed to the contrary, as it was the only currency of the country; that said King then stated he would confess judgment, which he then and there did, through his attorneys; that, on July 10th, 1863, defendant received, in full of said judgment, Confederate money, most of it being what was called seven-thirty, or interest-bearing Confederate States Treasury notes; that, on October 8th, 1863, defendant paid to said Franklin, after deducting the usual commissions, the sum of $4,534, in full of said claim; that complainant never employed defendant to sue said King to recover the interest due on said note, or any other note or sum of money whatever; that complainant never gave to defendant any instructions touching a suit of any kind for money, either principal or interest, against said King; that complainant never instructed defendant not to receive Confederate money on said claim, but, on the contrary, after the aforesaid collection, complainant importuned him to pay the money to her, which he declined to do, but finally let her have $50, which was allowed him in his subsequent settlement with her said trustee; that the entire

charge in said bill, as to the advice of defendant to complainant and said Franklin, to the effect that they would be compelled by military authority to receive Confederate money, is false.

The answer of the defendant, Mitchell, to the amended bill denied all the material allegations therein contained.

The following evidence was introduced for complainant :

R. D. HARVEY, sworn : About the time of the passage of the Funding Act, I quit taking Confederate money for my clients, without first consulting them. The Funding Act was passed February 17th, 1864. I was a practicing attorney during the war ; and when the currency got down to be worth not more than ten cents on the dollar, I would not receive it for clients without first getting their consent.

THOMAS TUMLIN, sworn : When Confederate money became badly depreciated, I ceased receiving it, except in cases where I considered the debts doubtful. I tried to pay a debt to my uncle, Lewis Tumlin, during the war, in Confederate money, and he told me I ought not to want to pay it, and I did not pay it until since the war. I quit taking Confederate money in the spring of 1863. I do not think prudent men were receiving it as late as July, 1863.

A. R. WRIGHT, sworn : I was not the paid counsel for either party, in the suit on the note for $4,300. I advised King to confess judgment. King told me he could pay off the claim in Confederate money, and asked my advice in the matter. I told him I did not think it would be received, but if he could do so I advised him to do it. I knew King and Mitchell were unfriendly at the time, and are now, I believe. I do not think that there was any collusion between King and Mitchell, nor that King acted in bad faith in confessing and paying the judgment.

Barber's table was introduced, showing that Confederate money was, as compared with gold, on July 1st, 1863, eight of Confederate money for one of gold ; on July 15th, 1863, ten of Confederate money for one of gold ; on October 1st,

King *vs.* King.

1863, was thirteen of Confederate money for one of gold; and, on October 15th, 1863, was twelve and one-half of Confederate money for one of gold.

WILLIAM D. FRANKLIN, sworn: I became trustee for complainant, at the request of Joshua and Mary J. King. Nearly one year after Joshua King gave the note, he desired to settle with Mary J., by delivering to her some negroes. She came up after me to go down and see if we could agree on the price of the negroes. I thought King's prices on the negroes too high, and therefore did not trade. King gave four separate notes for the interest, and paid all but one. Nearly one year after the note for $4,300 was given, he served me with the written notice that he would not pay anything more. S. T. King notified me to sue on the notes in the fall of 1862. I commenced suit to prevent the release of S. T. King as security. I did not expect to collect any money, as there was no collecting law. I did not expect to receive Confederate money in payment, and did not do so until authorized and requested so to do by complainant. I did not authorize the defendant, Mitchell, to receive Confederate money in payment of the trust fund. I received $4,534 in Confederate money from the defendant, Mitchell, on October 8th, 1863; paid complainant on the same day $234; paid the defendant, Gartrell, on March 17th, 1864, $4,300, with some interest that had accumulated on interest-bearing bills. Complainant came after me to go down to Rome and get the money. I went with her and received it in her presence. [Mrs. King said that she was destitute, and that the military would force her to take Confederate money, and that she had as well do it, and be living on it, is what was said, to the best of my recollection.]

Defendants objected to all that part of the foregoing testimony enclosed in brackets. The objection was sustained by the Court, and the complainant excepted.

The complainant and Mrs. Eliza Dupriest, her mother, testified and sustained all the substantial allegations of the

bill as to the instructions of complainant to the defendant, Mitchell, in reference to the enforcement of the provisions of the articles of separation against the defendant, King.

The defendants introduced no testimony. The jury returned the following verdict, to-wit: " We, the jury, find for plaintiff $4,300, principal, with interest, against defendant, Dr. J. A. King —

Amounting to.............................´.........................$ 7,327  00
Less.........,.............................................................    732  00

                Total amount.....................................$6,595  00

We find in favor of defendant, D. R. Mitchell.

The defendant, King, moved for a new trial, upon several grounds, unnecessary here to be set forth. The Court sustained the motion, and ordered a new trial, and complainant excepted.

During the trial the complainant requested the Court, in writing, to charge as follows, to-wit:

"If the jury believe, from the evidence, that Dr. King did not act in good faith in the payment of the debt, such payment is no protection to him, except to the extent of the value of the Confederate money. Whether Dr. King did or did not act in good faith is a question of fact for the jury to decide from all the evidence in the case." The Court modified the request by omitting the words, " did not act in good faith," and by substituting in their stead these words, "acted fraudulently, that he committed acts of fraud;" also, by omitting the words, "in good faith," in the second sentence of the request, and by substituting the word "fraudulently." To which refusal to charge and modifications of the written request to charge, complainant excepted. Complainant assigns error upon each of the aforesaid rulings.

A. R. WRIGHT; E. N. BROYLES, for plaintiff in error.
1st. Dismissal of bill as to Franklin and Hargroves, admin-

King vs. King.

istrator, was error: Story's Eq. Pl's, 284, 298; 7 Ga., 549; Hill on Trustees, 416. 2d. Charge should have been given as requested: 1 Bouv. Ins., 249; 37 Ga. R., 205, 220. 3d. King acted fraudulently, and therefore the discharge of said judgment is void: Code, sec. 3116; 1 Bouv. Dict., 613; 27 Ga. R., 453; 2 Pars. on Con., 767; Code, secs. 2709, 3123; 22 Ga., 594; Code, secs. 2908, 3122. 4th. Release by trustee, without consent of the beneficiary, set aside: 2 Pars. on Con., 715; Hill on Trustees, 274. 5th. Whether King acted in good faith is a question for the jury: 41 Ga., 439; 39th, 100, 569, 573; 38th, 311; 37th, 205, 230. 6th. Verdict was not sufficiently against the evidence as to require a new trial: 41 Ga., 71, 211, 299; 8th, 306; 10th, 381.

PRINTUP & FOUCHE; J. W. H. UNDERWOOD, for defendant. There was no evidence that King did not act in good faith, and a reviewing Court will not control the discretion of the Superior Court, except in extreme cases: 42 Ga., 219; 40th, 91; 38th, 129; 37th, 537; 36th, 604; 35th, 271; 34th, 375.

WARNER, Chief Justice.

This was a bill originally filed in behalf of complainant and her two minor children, against the defendants, King, Mitchell, Franklin and Gartrell, to recover the value of a trust debt, which the complainant alleges had been fraudulently paid in Confederate money, and received by Franklin, her trustee, in bad faith, and paid over by him to his successor, Gartrell, who had misappropriated and misapplied the same to the injury and damage of the complainant. On the trial, the Court having dismissed from the bill the defendants, Franklin and Gartrell, the jury found a verdict against King for the sum of $4,300, with interest thereon, and also found a verdict in favor of the defendant, Mitchell. The defendant, King, made a motion for a new trial, which was granted by the Court, whereupon the complainant excepted.

King *vs.* King.

The presiding Judge of the Superior Court is clothed with the power and authority by the Constitution and laws of the State to grant new trials, and, in the performance of that duty so devolved upon him, he may exercise a sound discretion in granting or refusing a new trial in cases where the verdict may be decidedly and strongly against the weight of the evidence, although there may appear to be some slight evidence in favor of the finding. In this case, the presiding Judge, in the exercise of the sound discretion vested in him by law, has granted a new trial, and we cannot say, in view of the facts disclosed by the evidence in the record, that he has abused that discretion, so as to authorize this Court to control it, and we therefore affirm the judgment of the Court granting a new trial.

The plaintiff in error, however, excepts to the rulings of the Court in dismissing the defendants, Franklin, and Hargroves, the administrator of Gartrell from the complainant's bill, as not being proper parties defendants thereto, and also in ruling out that portion of Franklin's answer to the seventh interrogatory, as to what Mrs. King said when she came after him to go down to Rome and receive the Confederate money, to-wit: "Mrs. King said she was destitute, and that the military would force her to take Confederate money, and that she had as well do it and be living on it;" and in substituting the words "acted fraudulently," instead of the words "did not act in good faith," as contained in the writen request to charge the jury. In our judgment, it was error in the Court below in dismissing the defendants, Franklin and the legal representative of Gartrell, as parties defendant to the complainant's bill, and especially so, under the decision of this Court in this case at a former term as to the liability of the respective defendants, then parties to the bill. The complainant was seeking to pursue the trust fund which had been paid by King to Mitchell, the attorney, and by him to Franklin, the trustee, and by the latter had been turned over to Gartrell, his successor. Whether all or either

King *vs.* King.

of the parties who had received the trust fund in Confederate money, had done so in bad faith, so as to make them all or any of them liable to the complainant, was the question to be decided under the evidence, and if liable at all, what was the extent of their liability, either jointly or separately, as the evidence might establish, according to the principles of law and equity, applicable to each one of them in the capacity in which they paid and received the fund; the parties received the fund from each other, and when a Court of equity gets jurisdiction of the parties through whose hand the trust fund has passed or been received, it will retain it for the purpose of making a complete and final decree so as to prevent a multiplicity of suits. The exception to ruling out the sayings of Mrs. King to Franklin, was, in our judgment, well taken. The witness proved her act in coming to him to go down to Rome to receive the Confederate money, but the Court refused to allow the witness to state her reasons for doing the act, made at the time. This was error. Although the acts and declarations of Mrs. King, in relation to the taking of Confederate money in payment of the trust debt, could not have been received to affect or prejudice the rights or interests of the minor children in that debt, still, her acts and declarations in relation thereto were competent to affect her own interest in that debt, and when the witness proved her act in coming to him to go down to Rome to receive the Confederate money, her reasons stated at the time for her act, should have been received as a part of the *res gestœ :* Code, 3720. The words "good faith," as contained in the request to charge, were in exact conformity with the ruling of this Court, when this case was before it at a former term, but the distinction between good faith and fraudulent, as applicable to the facts of the case, is too attenuated and shadowy to constitute a valid ground of error.

Let the judgment of the Court below granting a new trial be affirmed, with instructions as indicated in this opinion.