No. 40.—JOSEPH S. WORTHY *et al.* plaintiffs in error, *vs.* SANKY T. JOHNSON *et al.* defendants.

[1.] To sustain a bill against the charge of multifariousness, it is not indispensable that *all* the parties should have an interest in all the matters contained in the suit. It is sufficient, if each party has an interest in some matter in the suit, which is common to all, and they are connected with others.

[2.] Creditors and heirs, as a general rule, can only sue third persons through the representative of the estate. The exception is, where there is collusion, insolvency, unwillingness to collect the assets, when called on, or some other like special circumstance.

[3.] If heirs elect to set aside purchases made by executors, administrators, or guardians, at their own sale, they must go into Equity; and such sales are voidable only, and not, *per se,* void.

[4.] The doctrine of market *overt* in England, has not been generally recognized or enforced in this country.

[5.] The doctrine of market *overt,* applies to *judicial sales,* as well as to public sales, made under authority of law, by executors, administrators and guardians; and *caveat emptor* is the rule of all such sales.

[6.] Neither are Sheriffs, executors, or other officers of the law, and trustees, liable for the title or soundness of property sold by them, at public sale, unless upon their own express warranty, or where fraud exists.

[7.] Neither Sheriffs, nor executors, or administrators, can bind the execution debtor, or the estate of their testator or intestate, by any covenant respecting the property sold, or any other contract originating with themselves, and unauthorized by law.

[8.] All such covenants are personal merely, if it can be plainly inferred that they intended so to bind themselves.

[9.] Is it necessary to its validity, that every order of the Court of Ordinary, authorizing a sale of real estate or slaves, should recite, upon its face, that

it was made fully and plainly to appear to the Court, that the same was for the benefit of the heirs and creditors of the estate ? *Quere.*

[10.] Executors and administrators, in making sales of property, must comply with the statutory provisions, which authorize them, in every essential direction ; otherwise, the interest of heirs and creditors will not be divested.

[11.] This rule has been somewhat relaxed in favor of *bona fide* purchasers, but operates with full force against executors and administrators who purchase at their own sales, as well as against those who subsequently derive title from them, under a *judicial sale,* as execution debtors.

[12.] The Statute of Limitations is a good objection, as a defence by demurrer, if the facts appear upon the face of the bill ; if not, it must be made available by plea. In Equity, if the complainant be within any exception of the Statute, it is incumbent on him to state it in his bill.

Bill for discovery and relief, in Troup Superior Court. Demurrer decision, by Judge Hill, at November Adjourned Term, 1849.

The heirs of Thomas Worthy filed this bill against certain purchasers of negroes, sold by his executors, at public sale, and against the present holders of certain other slaves that were bought by said executors, at their own sale, and which had been sold by the Sheriff, *as* the property of said executors.

The bill avers that Thomas Worthy died testate, leaving all the negroes here in dispute for equal distribution between his wife and children. He conferred no power on the executors to sell the same. The executors obtained an order of the Ordinary Court, to sell said slaves and the real estate, which order did not recite the existence of the specified pre-requisites of the Statute to the granting of said order, but simply recited that it was applied for, and the executors had published said application in terms of the law—did not recite that the other personal property and the hire of the negroes, were not sufficient to pay the debts, &c.; that under said order, the executors proceeded, and sold the said negroes, without having advertised said sale sixty days, in any public gazette, or at the court-house door ; that at said sale, a part of the negroes were purchased by some of these defendants, and another portion were purchased by said executors, which latter portion had thereafter been sold to some others of these defendants.

The bill was demurred to—

1st. For multifariousness; no privity in defendants; cause of action is separate and distinct against each one; and no combination shown.

2d. It is brought in the name of the *wrong* parties; should have been brought by Worthy's legal representative.

3d. That complainants have a Common Law remedy.

4th. There is no equity in the bill.

The Court sustained each of the grounds, and dismissed the bill; and to this decision complainants excepted.

John L. Stephens, for plaintiff in error, cited—

*Mitford's Plead.* 241.  2 *Vern.* 37.  1 *Atkyns,* 283.  5 *Maddox Ch. R.* 93, '4.  *McCartney et al. vs. Calhoun et al.* 11 *Ala.* (*N. S.*) *Rep.* 110.  8 *Ves.* 347.  *Lester vs. Lester,* 6 *Ib.* 631.  10 *Ib.* 393.  17 *Ib.* 168.  5 *Ib.* 680.  *Prince's Dig.* 234, 238.

B. H. Hill and O. A. Bull, for defendants in error, cited—

*Story's Eq. Pl.* 218, 394, 406, '7, 412.  2 *Ves. Jr.* 95, 486.  6 *Johns. Ch. R.* 115.  *Fellows vs. Fellows,* 4 *Cowen,* 682.  1 *McCord,* 132.  3 *Ib.* 371.  3 *Peere Williams,* 394.  2 *McCord Ch. R.* 169.  4 *Paige,* 47.  6 *Ves.* 748.  *Bond et al. vs. Zeigler et al.* 1 *Kelly,* 342.

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] The first ground taken in the demurrer is, that the bill is multifarious, because it joins defendants, some of whom purchased directly themselves, at the executor's sale, while others bought at second hand, under executions against the executors, who purchased at their own sale.

All the defendants, as purchasers of the slaves, as the property of Worthy, have a common interest in resisting the equity of complainant's demand. They have, also, a common interest in sustaining the validity of the executor's sale, under which they all derive title; and these points being common to all, the bill is not multifarious. It is not indispensable that all the parties should have an interest in *all* the matters contained in the suit; it will be sufficient if each party has an interest in *some* matter in the

suit, and they are connected with others.    *Addison vs. Walker,* 4 *Young & Coll.* 444.    *Parr vs. Attorney General,* 8 *Clarke & Fin.* 435.*

[2.] The second ground of demurrer is, that the bill should have been brought by the administrator, *de bonis non,* and not by the heirs.

The general rule undoubtedly is, that creditors and heirs can sue only through the legal representative—the exception is, " unless there be collusion, insolvency, *unwillingness to collect the assets,* or some other special facts to warrant it.    *Gilbert vs. Thomas et al.* 3 *Kelly,* 575, *and authorities there cited.*   The bill in this case expressly charges, that application to sue has been made to the administrator, and that he refused to institute proceedings for the recovery of this property.    He is properly, therefore, made a co-defendant.

It is suggested that the name of the representative might be used, without his consent, to maintain this suit.    A *ne exeat,* however, or some other proceeding, requiring his voluntary action, might become necessary, in the course of the litigation, to protect the interest of the heirs.

[3.] The third ground taken in the demurrer is, that the complainants have an ample Common Law remedy.    None has been pointed out—none occurs to this Court; on the contrary, they are compelled to resort to Equity to make their election—not to ratify the purchase made by the executors at their own sale.    This step is equally necessary to render a satisfactory reason for not sueing through the legal representative of the estate.

[4.] The next and last ground in the demurrer is, that there is no equity in the bill; and the main points insisted on here, are, first, that the sale is valid, and secondly, if it is not, that the defendants, being *bona fide* purchasers, cannot be affected by any irregularity in the sale, or in the proceedings of the Court of Ordinary, under which it was made.

Does the doctrine of *caveat emptor* apply to the public sales of executors, administrators and guardians, made under the authority of law?    While the rules relating to market *overt* in England, by which certain privileges are allowed, which are not granted to private sales, have not generally been recognized or enforced in

---

*See *Warthen vs. Brantley & Daniel,* 5 *Ga. Rep.* 571.—[Rep.]

this country, and the doctrine obtains here, that no person can make a valid sale of property to which he has no title, and which he is not authorized by the real owner to sell:

[5.] *Judicial sales* are an exception; and in respect to these, as well as sales made under the Probate Acts of the several States, and sales of goods found, and of estrays, the general rules of market *overt* apply. *The Monte Alegre*, 9 *Wheat. Reps.* 616. *Heacock vs. Walker*, 1 *Tyler's R.* 341. *Forsythe vs. Ellis*, 4 *J. J. Marsh.* 298. *Sims vs. Alexander*, 3 *Yeates' R.* 268.

In South Carolina, it has been expressly held, that *caveat emptor* is the best possible rule that can be laid down. The Court emphatically states, that all who attend such sales, ought to take care and examine into the title, &c.; that no warranty, express or implied, can be raised on the part of the owner, as to whom the proceeding is compulsory; nor of the Sheriff, who is the mere agent of the Court; nor of the Court itself—and that the purchaser was compelled to pay the money bid at such sale, notwithstanding any defect in the title. *The Creditors of Thayer vs. Sheriff of Charleston*, 2 *Bay.* 170.

[6] In the case cited from *Wheaton*, the question of liability in judicial sales, particularly as to the quality of goods, was very fully considered, and it was there held—

1. That the owner is not chargeable for any representation or warranty of the agent of the law in selling.

2. That the officer is only the minister of the law, to execute the orders of the Court, and cannot be considered as warranting the property sold, so as to render himself personally liable, while he acts within the scope of his authority; and that the rule *caveat emptor* applies, generally, from the nature of the transaction, to all judicial sales.

Where a Sheriff sells goods on execution, there is, probably, an implied warranty, that he does not know that they are *not* the property of the execution debtor; and for a breach thereof, assumpsit would lie, perhaps, at the instance of the purchaser against the officer, to recover to the extent to which he has been damnified by the deception. *Pets vs. Blades*, 5 *Taunt.* 657.

[7.] The same doctrine applies to sales made by executors and administrators, under authority of law. A license to sell, gives no power, by warranty, to bind the estate which they represent. It would be but reasonable, that the Legislature should confer

Worthy *et al. vs.* Johnson *et al.*

this power, under certain restrictions. It would enable trustees to sell for a better price. And why should not the estate, at any rate, to the extent of the residue in the hands of the representative, be responsible to the holder for any failure?

Still, I repeat, the principle unquestionably is, that the representative has no power of charging the effects of the estate, by any contract originating with himself; neither is he required, by any duty of his office or trust, to enter into personal obligations respecting property which he sells. He is at liberty, to be sure, to do so, if he chooses, and by thus exciting the confidence of purchasers, enlarge the proceeds of the sale.

[8.] The exemption of executors, administrators and other trustees, from personal responsibility to a purchaser, except where fraud exists, or there is an express warranty, seems to be indispensable. For who would accept an office of this kind, if he were to become necessarily the guarantee, of him whom he represents, of the good title and soundness of all the property submitted to his charge, and which he may be obliged, by order of Court, to sell. It would be but poor indemnity to have to look, if a recovery were had against him, to creditors, distributees and legatees. It would but ill comport with the policy of the law, that officers so necessary should be subject to the operation of a principle, so fraught with danger to their interest, as to deter every one from the acceptance. 2 *Har. & Gill.* 176. It might be otherwise, if the purchase money remained in their hands, unadministered.

Can an executor or administrator become a purchaser at his own sale? In some of the States it has been decided, that such sales are, *per se*, void; and the Legislature of this State, by a recent Statute in relation to Sheriffs, have gone far to sanction this principle. They have not only prohibited Sheriffs from buying at their own sales, but declared all such purchases absolutely null, and have, in addition, subjected the officer to a public prosecution and severe punishment, upon conviction for a violation of the law. And much, perhaps, might be said in support of this principle, upon the score of public policy.

The doctrine, however, maintained, as it respects this class of trustees, by this Court, is, that where a purchase is made by a trustee, on his own account, of the estate of the *cestui que trust*, although sold at public auction, it is in the option of the *cestui que*

VOL. VIII 31

*trust* to set aside the sale, whether *bona fide* made or not; and that it is voidable only and not absolutely void. *Campbell vs. Walker*, 5 *Ves.* 678, 680. 13 *Ves.* 601. *Ex parte Lacey*, 6 *Ves.* 625. *Ex parte Bennett*, 10 *Ves.* 381, 385, 386. *Morse vs. Royal*, 12 *Ves.* 355. *Whitcomb vs. Minchon*, 5 *Mad. Rep.* 91. *Bell's Supplement, pp.* 11, 12. The heirs should make their election within a reasonable time, otherwise they would be precluded.

It is contended that the defendants, or at least that portion of them who bid off property, directly, at the sale, themselves, are protected in their title, because, as it is alleged, they are *bona fide* purchasers, even admitting the sale to have been contrary to law.

[9.] Two objections are taken to the legality of the sale. One, that the order of the Court of Ordinary does not show, upon its face, that the Court had jurisdiction; and the other, that the property was not advertised for sixty days, as required by the Statute. The Act of 1829, provides that " It shall be lawful for the Inferior Courts of the several Counties in this State, when sitting for ordinary purposes, to order the sale of any slave or slaves, belonging to the estate of any testator, or intestate, or ward, on the application of the executor or executors, administrator, administrators or administratrix, or guardian or guardians, which shall be at public auction, and on the first Tuesday in the month, between the usual hours of sale, at the place of public sales in the County where the letters testamentary of administration or guardianship may have been granted, giving sixty days' notice thereof in one of the gazettes of the State, and at the door of the court house of the County where such sales are to be held, when it is made fully and plainly to appear, that the same will be for the benefit of the heirs and creditors of such estate, or of the ward of such guardian or guardians: *Provided*, that a notice of such application for leave to sell, be first made known, in one of the public gazettes of this State, at least four months before any order absolute shall be made thereupon." *Prince*, 284.

The order passed by the Court of Ordinary, authorizing the sale, is in these words: " Upon the application of Benjamin P. Robinson and Jane Worthy, executor and executrix of Thomas Worthy, deceased, for leave to sell the real estate and all the negroes of said Thomas Worthy, late of this County, deceased, and having published the same in terms of the law, it is ordered by

the Court, that they proceed to sell the same in terms of the law in such case made and provided."

The bill charges, that the sale was not advertised for sixty days, nor at the court house door, as required by law and the order of the Court.

In *Clements vs. Henderson,* (4 *Ga. Rep.* 148,) this Court held, that " In order to divest the title of the heirs to the lands of their deceased intestate ancestor, by an administrator's sale, it must bo shown that the requisitions of the Statute, authorizing such sale, had been complied with;" and farther, that "after the authority of the Court of Ordinary to make the sale has been shown, the recitals in the deed made by the administrator to the purchaser, of the acts required to be done by him, under the Statute, will be considered as *prima facie* evidence of the truth of such acts having been done, until the contrary is shown."

It is not necessary, at this time, to express any opinion as to the validity of the order under which this sale was made. One of my brethren is very clear, that this order is insufficient; that our Courts of Ordinary, like all other Probate Courts, both in England and in this country, are Courts of limited jurisdiction, and that if no warrant is found upon the face of the proceedings of the Court, that then their acts must be taken to be *coram non judice*; that the fact does not appear in this order that it was made fully and plainly to appear, that the contemplated sale was for the benefit of the estate, and that, consequently, the Court of Ordinary had no more cognizance of the question of sale, than a Justice of the Peace had.

On the other hand, and without intending to confound the distinction between Courts of general and special jurisdiction, some of us think, that Courts should give a liberal construction to Statutes authorizing the sale of real estate and slaves, in Georgia, by executors and administrators; that public policy requires that all reasonable presumptions should be made in support of such sales, in favor of *bona fide* purchasers, especially respecting matters *in pais*. The number of titles thus derived, and the too frequent inaccuracy of Clerks and others concerned, in effecting these sales, renders this absolutely necessary; that if a different rule prevailed, purchasers would be timid, and estates consequently sold at a diminished value, to the prejudice of heirs and creditors; moreover, that mere *paper work* of this sort will afford

no guaranty for the security of estates, it being a notorious fact, that the fraudulent and selfish are the very *Pharisees of the law*, as to all formal observances, and that widows and orphans, as well as creditors, must look alone for protection to the vigilance of our Courts of Ordinary.

I allude to this point at this time, simply for the purpose of calling attention to it, and of suggesting to all concerned, the importance of reciting, in all orders for the sale of property, the facts which, under the law, authorize the Court to interfere ; and, farther, that as a part of the proceeding, it may be of vital consequence to send up a copy of the petition of the party, upon which the action of the Court is predicated, as this may be sufficient, under any view of the law, to confer jurisdiction.

[10.] It is conceded, on all hands, that executors and administrators, in making sales of property, must comply with the statutory provisions authorizing them, in every essential direction ; otherwise, the interest of heirs and creditors will not be precluded. *Monroe vs. James*, 4 *Mun.* 200. *Knox et al. vs. Jenks*, 7 *Mass. R.* 492. *Wiley & Gayle vs. White & Lester*, 3 *S. & P.* 358.

[11.] And while this rule may be somewhat relaxed in favor of innocent purchasers, (6 *Porter*, 219, 262. 1 *Ala. R. N. S.* 708. 9 *Ib.* 285,) yet it will certainly operate with full force against executors and administrators, who purchase, at their own sales, as well as against those who have subsequently derived title, through a *judicial sale*, from them, as execution debtors.

[12.] The Statute of Limitations has been relied on in the discussion, and this objection may be taken, no doubt, as a defence by demurrer, if it appear on the the face of the bill. At Common Law, the plaintiff replies to the plea of the Statute, if he would take himself out of it ; but in Equity, if he be within any exception of the Statute, it is incumbent on him to state it in his bill ; but here, the pleader has intentionally or otherwise, omitted to state the time when the negroes in controversy were sold by the executors, when the Statute would begin to run in favor of the defendants, unless prevented by some special reason. Under these circumstances, it can only be taken advantage of, by plea.

Some of the matters of which I have treated, might have been avoided. Having, however, determined to overrule the demurrer, and to send this bill back, to be pleaded to or answered, I

thought it best to advert to them now, as they would be necessarily involved in a trial upon the merits.

Judgment reversed.