WARNER, J.
The complainants allege in their .bill that they are the owners of certain described lots in the city of Brunswick which had been surveyed, marked out, and dedicated to the public for a city in the year' 1733, claiming to derive their title to the lots in said city under ancient grants made by the Crown of Great Britain, and the State of Georgia; that many of said lots had been granted by the King before the revolution, and many by the State since the revolution; that before .the year 1800, all the lots in the city of Brunswick had by grant, or sale, passed from the King and State into private hands. The complainants claim the lots in question by purchase and possession, under the aforesaid ancient grants, as the original source of their title, though not as joint purchasers of the several lots claimed by them. The complainants further allege that in the year 1826, Davis and Dart, under pretense of authority under the Head Rights Acts of this State, surveyed said lots, so dedicated and granted as aforesaid, as vacant lands, and obtained grants therefor from the State, which survey of the lots under the Head Rights Acts by Davis and Dart, is alleged to have been fraudulent and void, without authority of law, and in violation of the *law, because the said lots were not vacant lands, but had been and still were dedicated for a city, the city of Brunswick, and constituted the site of the' city of Brunswick which had in 1733 been, by General Oglethorpe, acting under the authority of the King of Great Britain, planned, surveyed, and dedicated as a city; and which was recognized and confirmed by the several Acts of the Legislature of this State, passed in the years 1787. 1788 and 1796. It is further alleged by the complainants in their bill, that the two grants which were issued by the State to Davis and Dart under the Head Rights survey are void, because, issued without authority of law, against the prohibition of statutes, and *407 for property to which the State had no title, and because procured by fraud. The complainants further allege in their bill, that the defendants are offering to sell the lots claimed by them, under their said fraudulent and void title, and are threatening to occupy the same, and that the effect of such conduct is to cast a cloud over the title of complainants, and greatly diminish the value of their property. Wherefore, the complainants pray for a discovery as to the fraudulent and complicated transactions alleged and set forth in their bill, and that the defendants may be restrained and enjoined from selling or taking possession of any of the lots claimed by complainants, and that they may be decreed to bring into Court the alleged fraudulent grants, and that the same may be cancelled and decreed to be null and void.
To this bill of the complainants the defendants demurred. First, because it was multifarious. Second, because there was no equity in the bill which entitles the complainants to the relief prayed for, and because they have an adequate remedy at Common Law. The Court below overruled the demurrér, and the defendants excepted, and now assign the same as erfor here.
Although the complainants are not joint purchasers of the lots claimed by them, yet, they claim to derive their title to the same from one common source, they claim title to the lots under one general right, and where several persons claim under one general right, they may file one bill for the establishment *of that right, without incurring the risk of a demurrer for multifariousness, although the title of each plaintiff may be distinct: 1st Daniel’s Chancery Practice, 396. The objection to a bill on the ground that it is multifarious, is not, as a general rule, favored by the Courts.
A dedication of land to the public for a city is, in its legal sense, a solemn and direct appropriation of the land for such use and will be enforced. If, as alleged in the complainants’ bill, the land comprising the site of the city of Brunswi.ck was dedicated by the Crown and provincial authorities of Great Britain to the public for a city, the site selected, a plan of streets, squares and boundaries was adopted, and, by that plan, the site was surveyed, marked out and dedicated to the public for a city, before the revolution, and if such dedication was recognized and confirmed by the legislative authority of the State, after the revolution, and the lots had^ been granted and the title thereto had passed to private persons under such grants, issued either under the authority of the Crown of Great Britain before the revolution, or under the authority of the State since the revolution, then, the title to the lots embraced within the boundaries of the site comprising the city of' Brunswick had passed out of the State, and the State had no title to the same at the time of the survey of Davis and Dart under the Head Rights law in 1826. It is expressly alleged in the complainants’ bill that the lots surveyed by Davis and Dart as vacant lands, under the Head *408 Rights Acts, were not vacant lands at the time the survey was made. This Court in Moody v. Flemming (4th Ga. Rep., 116) held, that lands were not subject to survey and to be granted in this State on Head Rights, unless they are vacant lands, thus giving an interpretation to the Head Rights Acts. Besides, the sixth section of the Act of 1796 prohibits any person or persons, under a penalty of five hundred dollars, from making an attempt to run up the commons of the towns of Brunswick and Frederica, and declares that all surveys heretofore made and grants surreptitiously obtained are null and void: Marbury and Crawford’s Dig., 159.
Taking the several allegations in the complainants’ bill to *be true, the State had no title to the lots in controversy at the time Davis and Dart obtained their grants under their survey under the Head Rights Acts, and the survey made by them of the lots in question was void under the provisions of those Acts, the same not being vacant lands.. And inasmuch as the survey of the lots made by them in 1826 was not only without authority of law but in violation of the public law of the State, the grants obtained by them from the State for the lots included in their survey, are also void, and they acquired no title to the land under them, even if the State had not previously granted the land and divested herself of the title thereto.
The prayer of the complainants is that the alleged void grants may be delivered up and cancelled, inasmuch as they create a cloud upon their title and the threatened proceedings of the defendants are calculated to diminish the value of their property. The defendants insist that the complainants have an adequate and complete remedy at law. It is true that under the provisions of our Code, in a contest between individual citizens, grants to land may be impeached before the Courts where they are void upon their face or are issued without authority of law, or against a prohibition in a statute, or for property to which the State had no title: . Code, section 2330. It is also true that this may be done without making the State a party to the suit, but, in our judgment, according to the allegations made in their bill, the complainants’ remedy in a Court of law would not be as complete and effectual as in a Court of Equity. Besides, a Court of Equity will entertain jurisdiction in order to avoid a multiplicity of suits.
A Court of Equity has jurisdiction to have the alleged fraudulent and void grants brought into Court and to decree that the same should be delivered up and cancelled as they have a tendency to throw a cloud over the complainants’, title: 2d Story’s Equity Jurisprudence, section 700; Brenton v. Smith and wife. 28th Ga. Rep., 442; Wynne v. Lumpkin, 35th Ga. Rep., 208. The demurrer being a general demurrer to the whole bill for want of equity, there was no error in *the judgment of the Court below in overruling it. Let the judgment of the Court below be affirmed.