FIRST NATIONAL BANK OF SPARTA *et al. v.* WILEY *et al.,* commissioners.

1. "A bill is not multifarious because all of the defendants are not interested in all of the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all, and that they are connected with the others."
2. "All persons who are directly or consequentially interested in the event of the suit are properly made parties to a bill in equity, so as to prevent a multiplicity of suits by or against parties at once or successively affected by the original case."
3. The petition set out a cause of action, and was not subject to any of the demurrers filed against it.

No. 1943. DECEMBER 18, 1920.

Equitable petition. Before Judge Park. Hancock superior court. February 16, 1920.

R. C. Wiley and R. L. Merritt, suing as the bond commissioners of the City of Sparta, brought an equitable petition against the First National Bank of Sparta, Hancock County, the Third National Bank of Atlanta, Fulton County, the City of Sparta, and Robert Holmes, of Hancock County, and alleged substantially as follows: The two named banks are corporations under the laws of the United States, and the City of Sparta is a municipal corporation under the laws of Georgia. By section 19 of the charter of that city (Acts of 1905, p. 1160) the mayor and aldermen of the city were authorized to elect or appoint a bond commission consisting of three citizens of the city, who should serve without compensation, and to whom the treasurer of the city should turn over the sinking-fund on hand and an additional sum of $500 each January 1st as a sinking-fund to meet the bonded indebtedness of the city. The bond commissioners were required at first to loan the same, reporting investments to the mayor and aldermen, and to collect the interest, and, after supplying any deficiency in the sinking-fund, to turn the remaining interest into the city treasury. By the act of 1910 (Ga. L. p. 100) the bond commission were required to invest in municipal bonds. This commission was made perpetual; vacancies were to be filled by the mayor and aldermen. By virtue of the act before mentioned the plaintiffs with John D. Walker were appointed as bond commissioners of the City of Sparta on or about May 1, 1906, and have since continued as such, except Walker, who, on or about September 27, 1917, absconded and removed from the city, and his whereabouts are unknown. No vacancy has been declared or filled because thereof; and plaintiffs are now the sole acting bond commissioners of the city. Pursuant to the act of 1910, the bond commissioners, on or about September 30, 1911, invested the sinking-fund then available in their hands in municipal bonds as follows: $4,000 City of Jackson, Georgia, 5 per cent. bonds due December 1, 1935; $2,000 in Town of Thomson, Georgia, 5 per cent. bonds due December 1, 1938; $1,000 City of Douglas 5 per cent. bonds due November 1, 1936; the amount paid by the commissioners of the City of Sparta for all of these bonds being $7,396.19, each bond being for the sum of $1,000 principal. On October 5, 1911, the bonds were deposited as a special deposit for safe-keeping with the First National Bank

of Sparta, a receipt being taken therefor, a copy of which was attached to the petition. Subsequently two other bonds were purchased and added to those in the bank, and on June 15, 1912, four bonds of the City of Jackson, were exchanged for four bonds of like amount of the City of Sparta, which were placed in the First National Bank of Sparta for safekeeping along with the other bonds belonging to the sinking-fund. The First National Bank at that time, and since, was the custodian of the funds not invested by the bond commission, and had on hand as a general deposit the moneys belonging to the sinking-fund not invested in bonds. The bank collected the coupons on the bonds, depositing the proceeds to the credit of the bond commission. The bank had authority to collect the coupons as due, borrowing the proceeds on general deposit on which it paid no interest until the same were invested or paid over to the city by the bond commission. The sum so collected each year by the bank from said bonds should have been not less than ———— dollars. Plaintiffs show that they have kept no account of what has been deposited or drawn out for their account as bond commissioners since they became such to the present time, and they relied wholly on the bank to keep the account, and they do not know how the account stands or should stand. Plaintiffs have requested of the bank a statement of its account and a full showing of the facts in connection therewith, but to the time of the filing of the present suit the bank has furnished the commissioners with none. On February 24, 1919, the plaintiffs demanded of the Sparta bank the possession of the bonds in its hands belonging to the sinking-fund, but the demand has not been complied with. They have been informed that the bonds, in point of fact, are, or have been, in the hands of the Third National Bank of Atlanta, which is the banking correspondent of the First National Bank of Sparta. Plaintiffs do not know by what right or authority the Third National Bank holds the bonds. They expressly deny that they have at any time, or for any person, ever authorized their removal from the First National Bank of Sparta. They are informed that said Third National Bank claims to have acquired them as security for some alleged indebtedness of John D. Walker, or the First National Bank of Sparta; but plaintiffs allege that the bonds could not have been lawfully or validly pledged there-

for. They are further informed that recently Robert Holmes, by taking up the debt alleged to be secured by the bonds, acquired possession thereof, or some pretended interest therein. While in possession of the bonds the Third National Bank and Robert Holmes have collected coupons from time to time from the bonds in an amount unknown to plaintiffs. They have demanded of the Third National Bank and Robert Holmes full information and the surrender of the bonds, but the demand has not been complied with. Plaintiffs are entitled to the custody of the bonds, and to collect the income therefrom for the purpose of administering the same as provided by law. Though without legal title, perhaps, they have the right of possession, and have certain powers to be exercised in trust as aforesaid, and are trustees acting without compensation, and the fund is a trust fund which may be traced in equity into whosesoever hands such fund passes. To the end that they may perform their duties they are entitled to an accounting of the sinking-fund, whether in cash deposited on general deposit, or in bonds deposited on special deposit, and for collection of the coupons from the First National Bank; and to an accounting from the Third National Bank of Atlanta and Robert Holmes, of their dealings with the fund and the bonds and the coupons therefrom. Plaintiffs are further entitled to the direction of a court of equity as to their powers and duties in the premises, and as the facts may appear on investigation to be. Waiving discovery from any defendant, the plaintiffs pray: that the First National Bank of Sparta make a full and complete accounting of the cash belonging to the sinking-fund that passed into its hands, including the collection of coupons from bonds, and a full accounting of the bonds belonging to the sinking-fund, in its hands for safekeeping and for collection of coupons; that the Third National Bank of Atlanta and Robert Holmes likewise account for their dealings with the bonds and the coupons therefrom, and set up such rights as they claim therein, to the end that the rights and liabilities of all with respect to said bonds may be settled; that plaintiffs be given direction by the court as to their rights and duties in the premises, as they may on investigation appear to be; and for such other relief as is equitable. The petition was demurred to separately by the First National Bank and by Holmes, upon the grounds: (*a*) that it is multifarious;

(*b*) that there is a misjoinder of causes of action; (*c*) that there is a misjoinder of parties defendant; and (*d*) because the title and right to the possession of the sinking-fund of the City of Sparta is vested in the city, which alone can maintain suit for the recovery thereof. The court overruled the demurrers on each and every ground. To this judgment the defendants excepted.

*Jones, Park & Johnston,* for plaintiffs in error.

*Hall, Grice & Bloch, R. L. Merritt,* and *Wiley & Lewis,* contra.

HILL, J. Is the petition, the substance of which is set out in the foregoing statement of facts, subject to the demurrer filed against it? One of the grounds of demurrer is that the suit is multifarious, in that it seeks to join a suit for accounting for funds, with a suit for the recovery of certain bonds alleged to have been converted by each of the three defendants, and also with a suit for relief against the City of Sparta. In the case of *Blaisdell* v. *Bohr,* 68 *Ga.* 56, it was held: "A bill is not multifarious because all of the defendants are not interested in all of the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all, and that they are connected with the others. All persons who are directly or consequentially interested in the event of the suit are properly made parties to a bill in equity, so as to prevent a multiplicity of suits by or against parties at once or successively affected by the original case." In the opinion of the court delivered by Justice Crawford, it was said: "'To sustain a bill against multifariousness it is not indispensable that all parties should have an interest in all the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all, and that they are connected with the others. 8 *Ga.* 236, and authorities there cited.' There was in this whole transaction but a single subject matter — the twenty-three shares of stock. How and where the liability will fall, and what shall be the final determination as to the rights of these parties, are not the questions. All the parties are connected with it in the conveyance from the true owner. They may all be heard and their rights and liabilities settled in this one suit, and the whole matter finally adjudicated. 21 *Ga.* 6, 35 *Ib.* 208. Mitford & Tyler, 271-3; Dan. Ch. Pl. and Pr. 334; Story's Equity Pl. 271, 271 a. Courts discourage the objection of multifariousness in all cases

where, instead of advancing, it would defeat the ends of justice. 12 *Ga.* 61, 1-2-3 of the opinion. . . All persons who are directly or consequentially interested in the event of the suit should be made parties. Persons are often necessary parties defendant to a suit, 'not because their rights may be directly affected by the decree if obtained, but because in the event of the plaintiff succeeding in his object against the principal defendant, that defendant will thereby acquire a right to call upon him, either to reimburse him the whole or part of plaintiff's demand, or to do some act towards reinstating the defendant in the situation he would have been in but for the success of the plaintiff's claim.' This is done to avoid a multiplicity of suits, and requires the parties who may thus be consequentially liable to be brought, in the first instance, before the courts, that all the liabilities may be adjudicated and settled in one proceeding. 1 Dan. Ch. Pl. and Pr. § 283." *East Atlanta Land Co.* v. *Mower,* 138 *Ga.* 380 (75 S. E. 418).

In this case, it seems to us, as said by Mr. Justice Crawford in the *Blaisdell* case, that there is in the whole transaction but a single subject-matter — the sinking-fund of the City of Sparta. All of the defendants have a common object as to whether the bonds and money passed out of the hands of the First National Bank of Sparta wrongfully. It is true that all of the parties defendant have not an interest in all of the matters set out in the petition, but it is also true that each party has an interest in the one subject-matter of the possession of the bonds belonging to the City of Sparta, and the possession of which belongs to the plaintiffs in this case as bond commissioners of that city. And all matters with reference thereto touch each one of the defendants, and they are in some way interested in the result of the suit. In 16 Cyc. 248, citing a number of authorities, including Georgia cases, it is stated: " In order to permit a joinder of plaintiffs, it is not essential that their demands should be joint; it is sufficient if they are all interested, although distinctly, in the subject-matter, and in the object to be attained. Indeed a common interest in the object to be attained may in itself be sufficient to sustain the joinder, as where several property owners unite to prevent the collection of an illegal tax, or the unlawful use of the street on which their property abuts. Plaintiffs having

distinct interests, but whose titles are derived from a common source, may unite in a bill to protect against an attack reaching that common source. The fact that the injury to each is caused by the same act has been held to afford a sufficient connection to maintain a joint suit. It is also held that the plaintiffs may join, although their interests be separate, where the relief sought by each involves the same question, requires the same evidence, and leads to the same decree." See also 6 Pom. Eq. Jur. § 892; *Dart* v. *Orme*, 41 *Ga.* 376. In the case of *Conley* v. *Buck*, 100 *Ga.* 187 (28 S. E. 97), it was ruled that "An equitable petition by a judgment creditor against the defendant in execution and others alleged, in substance, that they had all entered into a conspiracy to defeat the collection of the debt upon which the judgment was founded, that the common object of all the conspirators was to 'hide' and 'cover up,' in the names of the coconspirators, other than the defendant in execution, property which really belonged to him, and that in pursuance of this object various deeds had been executed purporting to convey specified parcels of realty of these coconspirators, which in fact belonged to the judgment debtor; the particulars in each instance being set forth. The petition prayed for the cancellation of the various conveyances which were, for the reasons stated, alleged to be fraudulent; and for a judgment subjecting all the property to the petitioner's execution. *Held*, that this petition was not demurrable as failing to set forth an equitable cause of action, nor as being multifarious, nor for want of sufficient fulness in stating wherein the alleged fraudulent acts of the several defendants consisted."

In the case of *King* v. *King*, 45 *Ga.* 644 (2), it was held: "Where a bill was seeking to pursue a trust fund which had been paid by K. to M., the attorney, by him to F., the trustee for complainant, and by him had been turned over to G., his successor, said fund being in Confederate money; and the questions in controversy were whether all or either of the parties who had received the Confederate money had done so in bad faith, so as to make them all or any of them liable to complainant, it was error to dismiss the defendants, F. and H., the administrator of G., as not being proper parties." In that case it was said: "In our judgment it was error in the court below in dismissing the defendants, Franklin and the legal representative of Gartrell, as

parties defendant to the complainant's bill, and especially so under the decision of this court in this case at a former term as to the liability of the respective defendants, then parties to the bill. The complainant was seeking to pursue the trust fund which had been paid by King to Mitchell, the attorney, and by him to Franklin, the trustee, and by the latter had been turned over to Gartrell, his successor. Whether all or either of the parties who had received the trust fund in Confederate money had done so in bad faith, so as to make them all or any of them liable to the complainant, was the question to be decided under the evidence, and, if liable at all, what was the extent of their liability, either jointly or separately, as the evidence might establish, according to the principles of law and equity, applicable to each one of them in the capacity in which they paid and received the fund. The parties received the fund from each other, and when a court of equity gets jurisdiction of the parties through whose hands the trust fund has passed or been received, it will retain it for the purpose of making a complete and final decree so as to prevent a multiplicity of suits." It will be observed that the facts of that case are similar to the instant one, in that the parties received the fund from each other, and therefore it is necessary to have all of the defendants parties to the suit in order to prevent a multiplicity of suits.

In the case of *Shewmake* v. *Robinson,* 148 *Ga.* 287 (96 S. E. 564), it was held that "The suit was to recover the property, with mesne profits, and by the petition as amended it was alleged that all of the defendants had converted the property. Under these circumstances they were all proper parties, and the petition was not demurrable on the ground of misjoinder of parties or causes of action." There is a similarity between the *Shewmake* case and the one now being considered. From the foregoing statement of facts it will be seen that the main purpose of the petition is to recover the sinking-fund bonds and the interest that has accumulated thereon, which, as in the case last cited, are alleged to have been converted by each of the defendants. It may be that all of the defendants have not converted all of the bonds claimed by the plaintiffs, or all of the coupons attached thereto, but if each has converted a portion thereof, on the trial of the case the plaintiffs could hold each one responsible for

whatever the evidence showed each had converted. As already said, the main purpose of the suit is to trace or follow up the trust fund, and the accounting for such portions of the trust fund as may have reached the hands of each of the defendants to the suit; and in view of the authorities cited above, and what has been said, we think that there is no misjoinder of parties or causes of action, but that the whole issue can be determined in this equitable cause. *Judgment affirmed. All the Justices concur.*