VOYLES *v.* FEDERAL LAND BANK OF COLUMBIA.

No. 11205. JUNE 13, 1936.

*Fred A. Gillen* and *Davis & Stephens,* for plaintiff.
*Pemberton & W. J. Cooley* and *Harry D. Reed,* for defendant.

GILBERT, Justice. The present controversy is over a tract of land which was formerly owned by B. F. Voyles, now deceased. In 1920 he conveyed the land to P. F. M. Furr by a deed absolute on its face, but in fact given as security for a debt. Voyles died, and the debt was never paid. Under successive conveyances the Federal Land Bank of Columbia claimed title. The bank leased the land to J. O. Voyles, a son of B. F. Voyles, and in 1931 instituted dispossessory proceedings against J. O. Voyles as a tenant holding over. Voyles might have resisted ouster by making affidavit, giving bond, etc., as prescribed in the Code, § .61-303, and having an issue made for trial in the superior court, as provided in § 61-304. In that event, if the issue be determined against the alleged tenant, the landlord shall be entitled to a writ of possession and be placed in possession by the sheriff. But Voyles filed a petition in equity to enjoin the dispossessory proceedings, admit-

ting title in the bank, but disputing the right of the bank to dispossess him. Judgment was rendered against him, and it was affirmed by this court. *Voyles* v. *Federal Land Bank*, 173 *Ga.* 844 (162 S. E. 106). Thereafter the bank sought to have the sheriff put it in possession, upon his refusal, by filing an ancillary petition to the original suit, seeking a rule nisi requiring the sheriff to show cause why he should not execute the dispossessory warrant. The sheriff filed an answer stating that he entered the premises to remove J. O. Voyles, but found Mrs. B. F. Voyles in possession, claiming that the premises were occupied by her, and not by J. O. Voyles, that the household furniture and other property belonged to her; and in his answer he prayed that the court pass such order as would protect him in his duty and make such parties as might be necessary. Upon the hearing on May 3, 1932, the court ordered that Mrs. B. F. Voyles have ten days in which to submit to the court, through the sheriff, whatever title she might have in the land involved in the controversy; that she be served with a copy of the order; and that in the event she failed to submit to the court whatever title she might have, the sheriff go upon the land and remove all persons therefrom. Mrs. Voyles filed a demurrer and a motion to strike the order of the court. She filed also an answer, setting up that the court had no authority to make her a party; that the facts recited in the order were adjudicated without making her a party and without her having participated in any of the proceedings; that the order was illegal, because she was required to set up her claim of title and right of possession to the sheriff, who had no authority to receive and pass upon the same; that it was illegal because it required her to set up a claim of title and right of possession in a proceeding between other parties, which had been finally adjudicated; and that she could not be proceeded against in the manner attempted. Though not specifically suggesting what procedure should be employed, it is inferable that her contention is that the bank should be remitted to a common-law action of ejectment.

The bank filed an amendment, setting up the order passed by the court on May 3, 1932; that Mrs. Voyles had demurred to the pleadings and made a motion to strike; that she claimed title under a quitclaim deed from P. F. M. Furr under date of February 12, 1932; that B. F. Voyles in his lifetime owned the land in-

volved in the litigation, executed to Furr a deed to secure debt, and died without paying the debt, and further set up its chain of title; that Mrs. Voyles had no title, because at the time she received the quitclaim deed from Furr he had no title to convey. The prayers were that the demurrer and motion to strike of Mrs. Voyles be overruled, and that the sheriff be required to remove J. O. Voyles, his family, household goods, and all personal effects from the land under the dispossessory warrant and previous orders granted in the proceedings, and that the bank be put in full and complete possession of the property. The court overruled the demurrer and motion of Mrs. Voyles. At the same time the bank filed another amendment setting up that the lands were not being cultivated properly; that the property was being allowed to depreciate; that timber was being removed, and a tenant-house had been taken down and removed from the premises; and the bank prayed that a receiver be appointed, and that he be authorized to remove J. O. Voyles and his family and Mrs. B. F. Voyles. Mrs. Voyles then filed a demurrer and motion to strike the petition as amended, setting up that the proceeding was one in which the court was without authority to make her a party after the original suit had been adjudicated between the bank and J. O. Voyles; that she could not be required to set up her title; and that no receiver could be appointed, because she was in possession under a claim of right, was not a necessary or proper party, had never had her day in court; that the case originated between other parties and was adjudicated before it was attempted to make her a party, and could not then protect her rights; and that the petitioner had a full, adequate, and complete remedy at law. The court overruled the demurrers and motions to strike, decreed that the title was in the bank, and appointed a receiver to take charge of the land and within thirty days to remove J. O. Voyles and family and Mrs. B. F. Voyles. All of these proceedings were had in September, 1932. Mrs. Voyles preserved her exceptions pendente lite, the grounds of which were that the court erred in overruling the demurrers and motions to strike, and in entering the decree, for the reason that no attempt was made to require her to show cause why she should not be made a party as being ancillary to said main case; that she had never had her day in court on this question of fact; that the proceeding was not ancillary to the

main bill, but on the contrary the main case was between other and different parties and had been finally determined by the Supreme Court of this State; and that the order attempted to adjudicate her claim by finding that she claimed under a deed from P. F. M. Furr, whereas the pleadings show that she claimed as an heir at law of B. F. Voyles also, which, as she alleged, was a question to be passed upon by a jury.

There was a hearing before the court and a jury at the August term, 1935, at which time the bank introduced documentary evidence in support of its chain of title. Mrs. Voyles testified that she was the wife of B. F. Voyles, who died nineteen years previously, and that she was living with him as man and wife at the time of his death, and remained in possession of the land until she was removed by the receiver appointed by the court; that she had not received or applied for a year's support or dower from the estate of her husband; that she did not know that her husband owed P. F. M. Furr anything, did not know that a suit was brought against her husband, knew nothing about the suit, and knew nothing about any administration of his estate or about the levy on the land; that she was in possession, but never received any notice; that J. O. Voyles was never in possession of the land; that she was in possession all the time; that Voyles, her stepson, lived there with her and looked after things; that she did not herself farm, but he looked after the business; that she did not know anything about J. O. Voyles renting the land from the bank, or about the deed from Furr to her; that Mr. Strickland and Mr. Gillen represented her, and she supposed they got the deed. R. C. Culberson, sheriff, testified that at the time he was given an order to dispossess J. O. Voyles he took him away; that he found Mrs. B. F. Voyles on the premises, but did not remove her; and that she said what was there belonged to her. Mrs. Voyles introduced a quitclaim deed from P. F. M. Furr to herself, dated February 12, 1932, conveying the land in controversy for a consideration of $1, the deed not being recorded. The court directed a verdict in favor of the bank. Mrs. Voyles filed a motion for a new trial on the general grounds, and amended with grounds that the court erred in admitting in evidence certain deeds in the chain of title of the bank; that the pleadings and the evidence showed that the case was disposed of before she was brought into court,

and she had not had an opportunity to establish her rights; that the uncontradicted evidence showed that she was in possession from the time of the death of her husband, several years before the bringing of the suit to which she was not a party; that she was in possession under a claim of right as heir of her husband, the common grantor, and no title had passed out of him; that no one was subrogated to the rights of P. F. M. Furr under the security deed, which had been canceled; and that the evidence and the pleadings showed that the bank's claim of title was based on a void sale. The court overruled the motion, and Mrs. Voyles excepted.

■ As it is urged by Mrs. Voyles that it was not permissible to make her a party under any ancillary petition, it is pertinent first to dispose of this objection. "The term 'ancillary bill' is applied to proceedings growing out of the original proceedings in the same court, and dependent on such proceedings, and instituted for the purpose of enforcing a judgment or rendering complete justice among all the parties at interest." 1 Words and Phrases (1st Series), 384. "An ancillary suit in equity is one growing out of a prior suit in the same court, dependent upon and instituted for the purpose of impeaching or enforcing the judgment or decree in a prior suit, and the jurisdiction of such suit is dependent upon the jurisdiction of the court of the prior suit." Id. (3d Series), 451. "A supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be either in aid of the decree, that it may be carried fully into execution. . . The jurisdiction of courts of equity to interpret and effectuate their own decrees by injunctions or writs of assistance, in order to avoid the litigation of questions once settled between the same parties, is well settled. Story's Eq. Jur. § 959; Kershaw v. Thompson, 4 Johns. Ch. 609, 612; Schenck v. Conover, 13 N. J. Eq. (2 Beasley), 220; Buffum's Case, 13 N. H. 14; Sheperd v. Towgood, Tur. & Rus. 379; Davis v. Black, 6 Beav. 393. In Kershaw v. Thompson, the authorities are fully reviewed by Chancellor Kent, and need not be re-examined here." Wilson v. Alexander, 276 Fed. 875, 881; Riverdale Mills v. Manufacturing Co., 198 U. S. 188, 195 (25 Sup. Ct. 629, 632, 49 L. ed. 1008). "Generally equity jurisprudence embraces the same matters of jurisdiction and matters of remedy as were allowed and practiced in England." Code of 1933, § 37-124. *Etheridge* v. *Pitts*, 152 *Ga.* 1,

6, 7 (108 S. E. 543). The ancillary petition in the present case was clearly for the purpose of having the court give effect to the judgment obtained by the bank against J. O. Voyles. It was an effort to obtain from a court of equity what was the equivalent of a technical writ of assistance. Technical terms being abolished in this State, it was only necessary to set out such language as would request the court to cause the sheriff to put the bank in possession. It recited the former judgment in its favor, and that the sheriff had refused to put the bank in possession. The relief would proceed as if being administered under the old technical writ of assistance. This writ is of considerable antiquity. Some trace its beginning as far back as the time of Henry VIII, Edward VI, and Mary. Though in England it has now been displaced by the writ of possession, which originally issued from courts of law, it is still used extensively in this country. 2 R. C. L. 727. It is referred to here only to show the purpose it was intended to serve, and which can now be accomplished in this State in an equity court without reference to technical characterization, and because in some of the other jurisdictions the relief here sought is referred to as being obtained by such a described writ. The power to issue such a writ or its equivalent order in equity is based on the principle that the jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of parties without relying on the co-operation of any other tribunal. 2 R. C. L. 727, § 3; 5 C. J. 1323, § 15. See Root v. Woolworth, 150 U. S. 401, 411 (14 Sup. Ct. 136, 37 L. ed. 1123) ; Riverdale Mills v. Manufacturing Co., 198 U. S. 188, 195 (supra), as to ancillary suit and writ of assistance.

Ordinarily the issue on the hearing of a defense to a dispossessory-warrant proceeding does not involve the question of title between the landlord and the tenant. When, however, it is made an issue by the tenant, the judgment thereon is conclusive between the parties. *Hammond* v. *Thornton,* 107 *Ga.* 259 (33 S. E. 183) ; *Garrick* v. *Tidwell,* 151 *Ga.* 294 (106 S. E. 551) ; *Allen* v. *Allen,* 154 *Ga.* 581, 587 (115 S. E. 17). In the equitable suit brought by J. O. Voyles he specifically alleged that the bank was the holder of the legal title, claiming only that he had a contract of rental. The bank admitted the allegation that it had legal title, but denied that Voyles had any contract or right of possession. Judgment

went for the bank. It is unquestionably true that not only the right of possession, but the question of title between J. O. Voyles and the bank, was concluded. ·It does not follow, because a statutory procedure by dispossessory warrant or complaint for land or common-law ejectment may in certain cases be employed against one not entitled to possession, that equity may not, in a proper proceeding, do full justice between the parties without remitting the petitioner to one of the other actions. In *Hunter* v. *Bowen,* 137 *Ga.* 258 (73 S. E. 380), and *English* v. *Little,* 164 *Ga.* 805 (139 S. E. 678), it was recognized by this court, by six Justices in one and five Justices in the other, that there is such a thing as a petition in the nature of "an equitable action of ejectment." It was said: "The plaintiff prayed for a decree declaring the title to be in him, and to enjoin the defendant from interfering with the premises. The defendant was alleged to be in possession, and the plaintiff sought to have him deliver up possession to the receiver, who was to turn the land over to him in the event that he prevailed." In the present case the bank was in even a better position. Title between it and J. O. Voyles was already conclusive. To its ancillary petition in the nature of a cross-bill the bank had filed an amendment asking for a receiver to conserve the property, as is provided in the Code, § 55-301: "When any fund or property may be in litigation, and the rights of either or both parties can not otherwise be fully protected, or when there may be a fund or property having no one to manage it, a receiver of the same may be appointed (on a proper case made) by the judge of the superior court having jurisdiction thereof, either in term time or vacation. A receiver is an officer of the court by which he is appointed." In the ancillary petition as finally amended the bank's prayers were that the demurrers and motions to strike, offered by Mrs. Voyles, be overruled; that it be put in possession of the premises; that a receiver be appointed and be authorized to immediately remove J. O. Voyles and family and Mrs. B. F. Voyles, and to take charge of the premises and rent the same to the best advantage of all parties at interest. There was also before the court the answer of the sheriff, seeking direction as to his duties, reciting the ·claim of· Mrs. Voyles, and asking that necessary parties be made.

The above furnishes a sufficient basis for a court of equity

to put the bank in possession, as against J. O. Voyles, of the property in question. It is also set forth in considerable detail, in order to dispose of the objections of Mrs. Voyles to the attempt to adjudicate her rights in the same proceeding. We think that the court undoubtedly had the right to make her a party and to dispose of the rights of all in the one proceeding. In the Code of 1933 it is declared: "The superior courts, on the trial of any civil case, shall give effect to all the rights of the parties, legal or equitable, or both, and apply on such trial remedies or relief, legal or equitable, or both, in favor of either party, such as the nature of the case may allow or require." § 37-901. "Any person desiring to obtain equitable relief may, in a separate suit for that purpose, or in connection with a suit claiming only such remedy or relief as is administered in courts of common law, claim equitable relief by appropriate and sufficient pleadings and obtain the equitable relief proper in the case." § 37-902. "A defendant to any suit or claim in the superior court, whether such suit be for legal or equitable relief, may claim legal or equitable relief, or both, by framing proper pleadings for that purpose, and sustaining them by sufficient evidence." § 37-905. "Any defendant may also, by proper pleadings and sufficient evidence, obtain the benefit of extraordinary remedies allowed in equitable proceedings by the superior court or by the judge thereof exercising equity jurisdiction, at such times and on such terms as such remedies are granted by said court or by said judge exercising equity jurisdiction." § 37-906. "Any person claiming equitable relief may make all necessary parties to secure equitable relief, either at the beginning of his suit or afterwards by amendment. Any defendant may also, if it is necessary to secure complete relief, make necessary parties." § 37-1005. "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action." § 37-1007. The section last quoted is particularly applicable to the present case. For the bank to join Mrs. B. F. Voyles with J. O. Voyles it is not necessary that their interests be identical. The test is the common interest in the subject-matter of the litigation. That subject-matter is the property of which the bank seeks to be put in possession, and the common interest of each of the defendants

is to defeat that effort of the bank and have possession for himself. The nature of the requisite common interest to justify the joining of another defendant under the Code section last cited was admirably set forth by Chief Justice Fish in *Conley* v. *Buck,* 100 *Ga.* 187 (28 S. E. 97), in which many cases were reviewed. In the same connection, see *Worthy* v. *Johnson,* 8 *Ga.* 236 (52 Am. D. 399) ; *Blaisdell* v. *Bohr,* 68 *Ga.* 56 ; *Portwood* v. *Huntress,* 113 *Ga.* 815 (39 S. E. 299) ; *East Atlanta Land Co.* v. *Mower,* 138 *Ga.* 382 (75 S. E. 418) ; *Brumby* v. *Board of Lights & Waterworks,* 147 *Ga.* 592, 597 (95 S. E. 7) ; *Stripling* v. *Bank of Hillsboro,* 148 *Ga.* 514 (97 S. E. 440) ; *Belcher* v. *O'Shields,* 150 *Ga.* 298, 301 (103 S. E. 492) ; *First National Bank of Sparta* v. *Wiley,* 150 *Ga.* 759, 764 (105 S. E. 308). "Equity seeks always to do complete justice ; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject-matter of the suit, provided the court has jurisdiction for that purpose." Code, § 37-105.

 But notwithstanding such general provisions and authorities, can it be said that Mrs. Voyles is entitled to have her claim tried in an ordinary common-law action of ejectment? Her contention is based on the theory that where a sheriff is ordered, as an incident to a judgment, to put one in possession, he can not oust any one claiming under a title independent of that of the defendant. In *Mattlage* v. *Mulherin,* 106 *Ga.* 834, 839 (32 S. E. 940), it was held : "A lessee from the grantor in a security deed, which has been duly filed and recorded, can be dispossessed in a summary way by the sheriff for the purpose of placing in possession a purchaser of the property at a sale had under a judgment setting up a special lien upon the same, rendered in a suit by the creditor on the debt secured by such deed, notwithstanding the lease may be older than the judgment under which the sale was had." Mr. Justice Cobb entered into a full discussion of what are now §§ 39-1309, 39-1312, 39-1313, and 39-1314 of the Code of 1933, dealing with what parties may or may not be ousted after judgment rendered; and stated: "It would be unreasonable to hold that it was the intention of the General Assembly, in the language which is used in these various statutes, that a person who bought or leased from a mortgagor after the mortgage was duly filed and recorded, or from a grantor in a security deed after

such deed had been likewise filed and recorded, should be entitled to hold possession of the property against the purchaser at a sale had in pursuance of the foreclosure suit in the one instance, or a suit resulting in a special judgment setting up a lien on the land in the other, and drive such a purchaser to the delay and expense incident to an action of ejectment." It is, as was said by Justice Cobb, "incumbent upon any one who is attacking the right of the sheriff to dispossess him to show that he comes within one of the exceptions. Those who are within the exceptions are declared to be 'tenants claiming under an independent title,' and persons other than 'the defendant, his heirs, or their tenants, or assignees since the judgment,' and 'the widow of the defendant, claiming dower,' and 'a lessee whose lease is older than the judgment under which the sale was made.'" It is incumbent on a person claiming to be within the exception to make a showing to the court, and it is for the court to decide whether or not such a showing makes the claimant exempt from summary dispossession. The benefit which the statutes confer upon such a claimant is merely that exemption from *summary* dispossession. If such person has a right to remain unmolested in the harsh and summary statutory processes, and to have his right tried by a court, there is no good reason that can be advanced why such right may not be as fully and completely vindicated in a court of equity as by an action of ejectment.

In *Coker* v. *Smith,* 63 *Ga.* 517, "Coker foreclosed a mortgage upon certain real estate belonging to. Worrill; and trouble and difficulties arising to enforce the judgment at law, he filed a bill in equity and had a receiver appointed to take charge and possession of the land. The receiver failed to possess himself of all of the land, but a part of it was held by Smith, not under the receiver but by purchase from Worrill, before the bill was filed, though after the foreclosure at law. A decree was had on the bill and a sale of the land under the decree, and Coker bought it. The fact that Smith was in possession of part of it seems to have been unnoticed when the decree was had. Smith was not made a party to the bill and had nothing to do with the decree, which seems to have been a consent decree agreed upon between Coker and Worrill. After the sale under the decree Coker filed a petition to have Smith removed, returnable to the first term of the court, to be

then tried and determined. The court, on demurrer to the proceeding, refused to entertain it, and dismissed it, whereupon Coker excepted." The petitioner had merely filed a petition for summary removal of Smith. The judgment of the trial court was affirmed. But the court pointed out what might have been done by Coker; and therein is seen an analogy to what was in fact done by the bank in the present case. Said the court: "Under the English practice a *supplemental bill was necessary to enforce the decree and sale against Smith*. This course might be followed with us, or the original bill might be amended so as to serve Smith regularly *and let him have his full day in court;* but upon mere motion or petition, we do not think he can be made summarily to respond and be removed. Story's Eq. Pleadings; Code [1873], § 4181 [1933, §§ 81-106, 81-107]. From this section of the Code it would seem that Smith should have been made a party to the bill by amendment, and then he could open up the whole merits and show any reason in equity why the decree would not be just to him, and not be called on merely to show why he should not be ousted of possession under a decree to which he was no party and under which he held nothing." [Italics ours.] In *Reaves* v. *Meredeth,* 120 *Ga.* 727 (3) (48 S. E. 199), it was held: "While the Code forbids a sheriff to put a purchaser in possession of land sold by him, when another person is in possession and has held it adversely to the defendant in fi. fa. from a time before the judgment against such defendant, the purchaser, when brought into equity by the party in possession, may, by answer and cross-bill, make such issues as to fraudulent and collusive title *as necessarily would arise in an action of ejectment between the same parties*. The issue made by the petition and answer and cross-bill was as to the title and right of possession of the land, and the court should not have stricken the answer and cross bill." (Italics ours.)

Assuming that Mrs. Voyles could be made a party, which we hold to be true, it would seem beyond question that the same rights allowed to the defendant as against the party bringing the suit in equity would also be accorded the defendant against Mrs. Voyles. This suit originated, it will be remembered, by J. O. Voyles seeking an injunction against the enforcement of a dispossessory warrant sued out by the bank, and we think that under the principle

of the *Reaves* case, supra, a resort to an action of ejectment, as to Mrs. Voyles, may not be imposed upon the bank in the present case. As supporting our view that a court of equity may in a proper case dispose of the rights of parties in a contest for possession of land originating in an application of one for an order requiring a sheriff to put him in possession, the case of *Bigelow* v. *Smith, 23 Ga.* 318, affords a principle in point. Bigelow bought at a sheriff's sale land which was in the possession of Smith. Bigelow found it necessary to ask the court for an order to put him in possession. Smith and Emanuel Lyan were served with notice to show cause why the order should not be made. Lyan set up a claim that he was the legal owner of the land; that Smith was merely his tenant; that judgment had been rendered in his favor in an ejectment suit at the same term of court, and he alleged his belief that Bigelow had bought in the land for Smith at a sale by a former sheriff; that at the time of that sale Smith had no title, and only a naked possession which he had yielded to Lyan; and that Bigelow could not acquire possession in a summary way, but should assert his claim by an action in ejectment or by a bill in equity. Upon that showing the court refused to make the order. Counsel for Bigelow then moved to be allowed to controvert the said showing, and to traverse the answer made by Lyan for himself and Smith. The court overruled the motion. Upon a review of the case this court said: "By an examination of this [act of 1823, Cobb, 512] and the several other statutes relating to the same subject, it is apparent that possession was intended to be given only against the defendant in execution, and those holding under him. And, conceding this to be the true construction of the law, the applicant had made out a prima facie case, so as to entitle him to a writ. The land was sold as the property of Smith. He was in possession at the time of the rendition of the judgment, when the sale took place, and when this application was made. But Lyan comes in and shows for cause against the rule: 1st. That Bigelow bought the land for Smith, and not for himself. And, secondly, in terms of the act recited, that he himself had acquired possession of this tract of land, under the judgment of a court of competent jurisdiction; and that Smith is now in as his tenant. If this be so, Smith can not be summarily ejected. But why should Bigelow, instead of

being remitted to his action, not be allowed to traverse the return of Lyan? Having brought his case within the statute, why refuse him the relief which it gives, without a hearing? *And why not settle this controverted title in this way, as well as by an action at law?* [Italics ours.] For refusing this privilege to the purchaser, we are constrained to reverse the judgment." It would seem to be an anomaly to say that the same court which had rendered the judgment in favor of the bank, and having before it an application to be put in possession, having all parties before it, and being vested with power to afford all rights, both legal and equitable, would be obliged to remit the bank to an action of ejectment against Mrs. Voyles. To do so would not only subject the bank to further and expensive litigation but would bring upon the court itself the vexation of multiplicity of suits, which, where possible in equity, is always sought to be avoided. Under the authorities hereinbefore discussed, we think it not only proper but common sense for the court, finding Mrs. Voyles to be without any title or right to possession, to issue an order to put the bank in possession, as well against her as against J. O. Voyles. It follows that the court did not err in overruling the demurrers and motions to strike, and in putting a receiver in charge of the premises pending a final determination of the cause.

■ ■ Upon the final hearing before a court and jury the bank introduced in evidence its muniments of title, dating from the first deed from B. F. Voyles, deceased. It is unnecessary to analyze these documents. It is sufficient to say that they showed full legal title in the bank. Mrs. Voyles' quitclaim deed from Furr was given at a time when he had conveyed his title to another person. Mrs. Voyles' claim of possession seems to us belated and coming with poor grace, and that was evidently the view of the trial judge. During all the time when proceedings were being had against J. O. Voyles, her stepson, living on the premises part of the time as lessee under a contract with the bank and thereafter as a tenant holding over, and throughout the time in which the case was appealed to this court, she never intimated that she asserted or intended to assert any right whatever. When J. O. Voyles was finally concluded by a judgment of this court, and it became imminent that the property would pass into the hands of the bank, she voiced for the first time her alleged rights to pos-

session as a widow of one whose title had passed from him before his death, and under a quitclaim deed of which she herself disavowed any knowledge of its issue. She presumes that it was obtained by her attorneys, but it is at best a paper from one who had no title to convey. Aside from the fact that the debt of her deceased husband was never paid and the property was sold thereunder by Furr, she does not offer to do any equity whatever; and having no rights at law or in equity, the court did not err in directing the verdict for the bank, and in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*