## MATTLAGE *v.* MULHERIN'S SONS & COMPANY.

1. A lessee from the grantor in a security-deed, which has been duly filed and recorded, can be dispossessed in a summary way by the sheriff for the purpose of placing in possession a purchaser of the property at a sale had under a judgment setting up a special lien upon the same, rendered in a suit by the creditor on the debt secured by such deed, notwithstanding the lease may be older than the judgment under which the sale was had.

2. A duly filed and recorded deed, which plainly shows that it was given to secure a debt, but does not show when the same matures, is notice to one dealing with the grantor therein of all the rights which the grantee has under the contract performance of which is thereby secured. Especially is this true where the deed in terms refers to the bond for titles held by the grantor as containing the "terms and conditions" of the contract of indebtedness.

Argued February 7,—Decided March 17, 1899.

Injunction.  Before Judge Callaway.  Richmond superior court.  November 3, 1898.

*J. S. & W. T. Davidson,* by *J. R. Lamar,* for plaintiff in error. *F. W. Capers,* contra.

COBB, J.  On June 5, 1895, Kahrs executed and delivered to Mattlage a deed which was duly filed and recorded on the day following the date of its execution, and which contained the following clause: "This deed is made under the provisions of the Code of Georgia of 1882, sections 1969 et seq., to secure a debt of $25,000 and interest, upon the terms and conditions set forth in the bond for titles given by Charles F. Mattlage to Nicholas Kahrs contemporaneously with the making of this

deed." The deed contained no statement with reference to the date of the maturity of the debt. The debt was represented by a promissory note, which contained the following clause : "This note is subject to earlier maturity, should any semi-annual instalment of interest remain unpaid for sixty days after maturity." The bond for titles referred to in the deed was recorded in the office of the clerk of the superior court of Richmond county on June 29, 1896. In addition to the "earlier maturity" clause of the note, above quoted, the bond for titles contained the following: "The first loan shall be subject to earlier maturity, and the second likewise, if an extension should be made for the whole or any part of said amount, should any instalment of interest remain unpaid for sixty days after its maturity, or should any insurance, tax, or other assessment which said Mattlage shall have paid off, remain unrefunded for sixty days, with five per cent. interest from date of payment, then in either of said cases, the entire debt may, at the option of said Mattlage, become due, payable and collectible, anything in the note to the contrary notwithstanding." On June 3, 1896, Kahrs leased a part of the property described in the deed to Mulherin's Sons & Company for three years at a stipulated monthly rental, for which they gave their notes falling due each month. Kahrs discounted certain of these notes maturing in 1898 and 1899. An instalment of interest on the debt due Mattlage by Kahrs, falling due on July 1, 1897, having remained unpaid for sixty days, thereafter, on June 14, 1898, Mattlage filed suit on the notes, and on July 16, 1898, obtained a common-law judgment for the amount due on the debt and also a special judgment against the property described in the deed. Execution issued accordingly. After levy and due advertisement the property was sold at sheriff's sale on October 4, 1898, and purchased by Mattlage, to whom the sheriff delivered a deed to the same. The sheriff being about to put Mattlage in possession of the property which Mulherin's Sons & Co. had leased from Kahrs, they applied for and obtained an injunction to prevent the sheriff from dispossessing them. To the granting of this injunction Mattlage excepted.

It is contended that, because the lease of Mulherin's Sons &

Co. was older than the judgment under which the sale was made, there is no authority for the sheriff to dispossess them and place the purchaser in possession. In order to determine whether or not this contention is correct, we must read in connection with each other the following sections of the code, which relate to the subject of the right of the sheriff to put purchasers at sheriff's sales in possession: "Whenever a present interest in land is sold by any judicial officer, it shall be his duty to place the purchaser or his agent in possession of the land, and to this end he may dispossess the defendant in the process, his heirs and his tenants, or his lessees or vendees of younger date than the judgment upon which the process issues; but he may not dispossess other tenants claiming under an independent title." Civil Code, § 5451. "When any sheriff, or other officer, shall sell any real estate by virtue of and under any execution, it shall be the duty of such sheriff, or other levying officer, upon application, to put the purchaser, his agent or attorney, in possession of the real estate sold: *Provided*, that the provisions of this Code shall not authorize the officer to turn out any other person than the defendant, his heirs, or their tenants, or assignees since the judgment." Civil Code, § 5468. "If the purchaser of real estate, at sheriff's and other sales under execution, shall fail to make application for possession thereof until the next term of the superior court after such sale takes place, or until the officer making such sale goes out of office, such possession can only be obtained under an order of said superior court." Civil Code, § 5469. "The widow of the defendant, claiming dower, can not be dispossessed of the mansion; nor can a lessee, whose lease is older than the judgment under which the sale was made, be dispossessed under the provisions of the two preceding sections." Civil Code, § 5470.

Construing these sections together, it can be clearly seen that it was the intention of the General Assembly to provide that the general rule should be, that in all cases where a present interest in real estate was sold by a judicial officer under any execution, the purchaser at such sale should be entitled to be placed in possession by the officer making the sale, in a summary way, and thereby be saved the delay and annoyance

incident to acquiring possession by an ordinary suit at law founded upon the title acquired by him at the sale. This is undoubtedly the general rule that was intended to be established. To this rule certain exceptions were made. It is incumbent upon any one who is attacking the right of the sheriff to dispossess him to show that he comes within one of the exceptions. Those who are within the exceptions are declared to be "tenants claiming under an independent title," and persons other than "the defendant, his heirs, or their tenants, or assignees since the judgment," and "the widow of the defendant, claiming dower," and "a lessee whose lease is older than the judgment under which the sale was made." Taking these exceptions, which are found in three different sections of the code dealing with this matter, what was the intention of the General Assembly with reference to who should be excepted from the operation of this general rule? In order for one to bring himself within the exceptions he must show, either that he claims under an independent title, or that he claims under a title derived from the defendant anterior to the judgment, and of such a character that under no circumstances could the judgment relate back and become a lien upon the property thus acquired. The identical question raised in the present case has never been decided by this court. In the case of Seymour v. Morgan, 45 Ga. 201, Judge McCay uses this language: "It would be giving very extraordinary power to a sheriff's sale to say that the sheriff might put the purchaser in possession by turning out all who can not set up a good title against the sale. It would be a very short way to change the possession in case of a dispute about the title. The statute is the rule. The sheriff may turn out the defendant, his tenants, and his assignees since the judgment; further than this he can not go. The fact that the lien of this judgment dates back does not help the case. One buying land after a judgment against the owner, which has been vacated by an appeal, buys it with notice and subject to the final judgment, but he is no more a purchaser after the judgment than one who buys with notice of the vendor's lien or with notice of any other fact which will make the land subject to a judgment against his

vendor." Some of this language would indicate that the
learned judge who delivered that opinion did not think that
the power to dispossess in a summary way existed in cases like
the case now under consideration; but in a subsequent case
(*Rival* v. *Gallagher*, 52 *Ga.* 630) the same judge uses this lan-
guage: "This case does not, therefore, bring up the point in-
sisted on in the argument, though we incline to think that as
a purchaser from the mortgagor with notice buys only the
equity of redemption, and has a right to redeem, that he stands
in the mortgagor's shoes, and can not resist the right of the
purchaser to be put in possession any more than could the
mortgagor.   The case in the 45 *Ga.* 203, stands on a different
footing.   The right of plaintiff who has got a judgment on an
appeal to go upon property sold by the defendant after the first
judgment, is peculiar.   The statute, in terms, declares that the
property shall not be bound by the first judgment, except that
the defendant can not alienate it.   The sale is under the sec-
ond judgment.   That, for certain purposes, it will operate so
as to treat land sold by the defendant since the first judgment
as still his, even in the hands of a purchaser for value without
notice, does not alter the fact that it is sold under the second
judgment.   Besides, the judgment of foreclosure is not a judg-
ment against the defendant.   It is a *quasi* proceeding *in rem*
to assert against the mortgagor, and all claiming under him
subsequent to the record, or having actual notice, the lien of the
mortgage on the land."   The reason for the conclusion reached
in the case in 45 *Ga.* was due to the peculiar language of the law
in reference to appeals, which is now embodied in Civil Code,
§ 5352, and is as follows: "In all cases where a judgment shall
be rendered and an appeal shall be entered from such judgment,
the property of the defendant shall not be bound by the first
judgment, except so far as to prevent the alienation by the de-
fendant of his property between the signing of the first judg-
ment and the signing of the judgment on the appeal, but shall
be bound from the signing of such judgment on the appeal."
What is said by Judge McCay in 52 *Ga.* is obiter, that case be-
ing one in which there had been a verdict rendered in a claim
case finding the property subject to a mortgage fi. fa., and there-

fore there could be no question that the sheriff was authorized
to dispossess this claimant.    The reasons given, however, why
there would be a right to dispossess even if there had been no
verdict in the claim case are so satisfactory that we are willing
to follow them in the present case, although what is there said
is not binding as authority.    It would be unreasonable to
hold that it was the intention of the General Assembly, in the
language which is used in these various statutes, that a person
who bought or leased from a mortgagor after the mortgage was
duly filed and recorded, or from a grantor in a security-deed
after such deed had been likewise filed and recorded, should
be entitled to hold possession of the property against the pur-
chaser at a sale had in pursuance of the foreclosure suit in the
one instance, or a suit resulting in a special judgment setting
up a lien on the land in the other, and drive such a purchaser
to the delay and expense incident to an action of ejectment.  It
is contended, however, that even if this be true, there was
nothing to put Mulherin's Sons & Co. upon notice that the debt
due by Kahrs, which was secured by a deed, would mature
earlier than five years.    To this it may be answered that there
is nothing in the deed to show when the debt would mature,
but Mulherin's Sons & Co. were put on notice by the record of
the deed that there was an outstanding debt, for the payment
of which the title to the property therein described was pledged,
and this imposed upon them the duty to inquire when that
debt would mature and thus ascertain for what length of time
they would be safe in dealing with Kahrs as the owner of the
property.    While the record of the bond for titles was not con-
structive notice to Mulherin's Sons & Co. of what was therein
contained, the deed referred to the bond as to the maturity of
the debt, and any one dealing with Kahrs as the owner of the
property was bound to inquire as to all matters in connection
with this debt.    Inquiry either of Mattlage, the creditor, or of
Kahrs, the debtor, would have brought full information; and
such being the case, Mulherin's Sons & Co. must be dealt with
as if they knew all that this inquiry would have elicited. The
court erred in granting the injunction.

*Judgment affirmed.    All the Justices concurring.*