## WESTERN UNION TELEGRAPH COMPANY *v.* BROWN & RANDOLPH COMPANY *et al.*

1. Where the owner of property incumbered it with a security deed and a contractor's lien, and thereafter leased a portion of it to a third person for a term of years, the holders of the liens will be compelled to sell such property in such a manner as not capriciously, unnecessarily, and unjustly to interfere with such leasehold interest.
2. Applying the principle ruled in the foregoing note, the court erred in refusing an interlocutory injunction.

No. 2891. SEPTEMBER 20, 1922. ADHERED TO ON REHEARING, SEPTEMBER 30, 1922.

Petition for injunction. Before Judge Pendleton. Fulton superior court. October 8, 1921.

The Western Union Telegraph Company brought an equitable petition against Brown & Randolph Company, the Metropolitan Life Insurance Company, A. V. Gude Jr. as surviving partner of Gude & Company, Edward T. Brown, and J. I. Lowry, sheriff of Fulton County. The petition alleged in substance the following: Some time prior to May, 1918, plaintiff entered into negotiations with Brown & Randolph Company for a lease of certain space in the building to be known as the Transportation Building, then being constructed by the Brown & Randolph Co., at the southwest corner of Marietta and Forsyth Streets in Atlanta, Georgia. As a result of the negotiations plaintiff and Brown & Randolph Co. entered into a lease contract bearing date May 14, 1918. Under the terms of the lease and subject thereto plaintiff leased the 7th, 8th, 9th, and 10th floors of the building, amounting to 43,104 square feet, at a rental of 70 cents per square foot yearly; also 5096 square feet in the sub-basement at a yearly rental of 25 cents per square foot. On July 30, 1918, plaintiff and Brown & Randolph Co. agreed upon a supplement to the original lease, by which plaintiff leased an additional space of 1650 square feet in the southwest corner of the fifth floor of the building at a rental of 70 cents per square foot yearly. The total amount of the rental of the space agreed to be paid for by plaintiff to Brown & Randolph Co., annually is the sum of $32,601.80, payable in twelve equal installments monthly in advance. A copy of the lease contract and the supplement thereto is attached to the petition and made a part thereof. The lease as therein provided, and subject to the other terms, expires December 30, 1938. Upon the completion of

the building plaintiff moved therein, and has been in the continuous occupancy and use of the leased space. Plaintiff has fully complied with all the covenants and conditions required of it under the lease. In order to enable plaintiff to use and occupy the leased premises it was necessary to arrange the floor space in accordance with the requirements of plaintiff, by dividing it up into rooms or halls of varying sizes, with a very large hall or room for its operators' offices, for its various departments, etc. It was necessary to run telegraph cables to and into the building, and to locate and build generators, install telegraph equipment, office furniture, etc. A great part of this expense was incurred and paid for by plaintiff, which expended more than $150,000 in putting the leased premises in condition for carrying on its business therein. Brown & Randolph Co., and Edward T. Brown, who was president and a principal stockholder of the company, knew that plaintiff would be compelled to incur a very large expense in possessing and using the premises, and that such expense would be justified only by a lease for a long term of years; and plaintiff entered into the lease and moved into the building and incurred the expense of moving and of fitting up the premises only because it had incurred a lease contract for a minimum term of twenty years, with the privilege of securing additional space if required. It is alleged on information and belief, that since it entered into the lease contract and the use and occupancy of the premises, Brown & Randolph Co. and Edward T. Brown have conceived the idea that were said space, now occupied by plaintiff, available, they could rent the space on more favorable terms and could secure higher rates of rental than they contracted to accept from plaintiff, and are anxious either to force a cancellation of plaintiff's lease contract and to dispossess it, or require it to pay a greatly increased rental for the privilege of continuing in the premises, well knowing that plaintiff would be unable to find other quarters suitable for carrying on its business, and believing that if by any method the lease contract could be canceled or set aside plaintiff would be forced to continue in the use and occupancy of the premises, though upon unreasonable and unconscionable terms. In an effort to oust plaintiff, Brown & Randolph Co., on March 12, 1921, served notice on plaintiff that it had violated the terms of the lease contract, and

demanded possession of the premises. This charge was frivolous and unfounded, and was made for the purpose of declaring a cancellation of the lease contract and compelling plaintiff to enter into a new contract for unconscionably high rental, at a loss to plaintiff of very large sums annually during its further use and occupancy of the premises. Brown & Randolph Co. has suffered the following judgments to be obtained against it: (1) A judgment in favor of Metropolitan Life Insurance Co., in connection with the foreclosure of the loan deed against the property, the judgment bearing date of September 6, 1921, for principal, interest, attorney's fees, and costs, amounting to $418,774.51. It is contended that this judgment represents a loan superior to the rights of petitioner. (2) A judgment in favor of A. V. Gude Jr., surviving partner of Gude & Co., representing the foreclosure of a contractor's lien, dated May 2, 1921, for principal, interest, attorney's fees, and costs, amounting to $436,706.80. It is contended that this is a lien on the building prior to the judgment and execution of the Metropolitan Life Insurance Co., and prior to the rights of the plaintiff. (3) A judgment in favor of Edward T. Brown, the judgment having been secured on certain promissory notes and being dated May 2, 1921, for principal, interest, attorney's fees, and costs, amounting to $435,070.07. (4) A judgment in favor of Charles T. and John L. Hopkins, dated July 5, 1921, for principal, interest, and costs amounting to $5,-511.50. This judgment and the execution issued thereon have been. transferred to Edward T. Brown, making the total judgment indebtedness held by Edward T. Brown $440,581.57. The two judgments and executions alleged to belong to Edward T. Brown are inferior to the rights of plaintiff in connection with the use and occupancy of the premises. The execution issued on the judgment of the Metropolitan Life Insurance Co. has been levied on the building, and the sheriff has advertised the property for sale on the first Tuesday in October, 1921. If the sale is allowed to proceed and the property be sold as advertised, the defendants contend that the sale will divest the plaintiff of all its rights, estate, interest, and property acquired by it under the lease contract and by its possession, use, and occupancy of the premises under the contract, and that plaintiff can be dispossessed from the premises by the purchaser of the property, unless plain-

tiff will enter into an entirely new lease contract, and that plaintiff will lose the value of the lease contract for the remainder of the term of years, and will also lose the benefit of the large sum that it has expended in making the leased premises suitable to its use and occupancy. The loan deed from Brown & Randolph Co. to the Metropolitan Life Insurance Co. was executed and recorded prior to the execution of the lease contract between Brown & Randolph Co. and plaintiff; and plaintiff is advised that there is serious danger of loss to it of all the benefits accruing from the lease contract, as well as the large expenditure incurred by it, unless the property is advertised and sold subject to its rights, as hereinbefore set out. It is alleged on information and belief, that Brown & Randolph Co., through Edward T. Brown, its president, defaulted in its obligation to the Metropolitan Life Insurance Co., for the purpose of causing that company to declare the principal amount of its indebtedness due, and to foreclose the indebtedness and the security deed, principally for the purpose of causing a sale of the building and its appurtenances under an execution contended to be superior to the rights of plaintiff, so that the property may be sold under the execution, and plaintiff be dispossessed from the property and its rights to continue in the use and occupancy under the terms and conditions of its lease contract be destroyed; that Brown & Randolph Co. has no other visible assets than those levied on under the execution of the Metropolitan Life Insurance Co.; that the judgments and executions against Brown & Randolph Co., aggregating, with interest, more than $1,300,000, represent a sum greater than the price the building and assets will bring at sheriff's sale; and that upon the sale of the building as advertised, Brown & Randolph Co. will be hopelessly insolvent, so that a claim for damages by plaintiff against Brown & Randolph Co. would be valueless; that it is the purpose of Edward T. Brown, through himself or his agents, to buy in the property, organize a new company, place a new loan on the property to replace the loan of the Metropolitan Life Insurance Co., and by this process undertake to oust the plaintiff from its possession of the premises, and cause plaintiff to lose the value of the remaining years of its lease and the expense involved in making the premises suitable for its use and occupancy; that the Metropolitan Life Insurance Co., at the time of making

the loan secured by the deed, knew that the money so secured would be used to construct the Transportation Building, that the space in the building would be leased for varying terms of years 'to lessees, some of whom would incur expense in fitting up the leased space to meet the necessity of the lessees as well as expense in moving into the building, and that it was the intention of Brown & Randolph Co. to locate in the building, to as great extent as possible, lessees engaged in the transportation business, such as railroad companies, telegraph companies, etc; and that at the time of making the loan the Metropolitan Life Insurance Co. was advised that for long-term leases Brown & Randolph Co. expected to get a rental of about 70 cents per square foot annually. A similar allegation was made with reference to Gude. Plaintiff is without adequate remedy at law, and it is entitled to equitable relief; it has, by virtue of its contract of lease with Brown & Randolph Co., an unexpired term of more than seventeen years, and by virtue of the expense incurred by it in connection with the lease, coupled with its use and occupancy of the premises, a valuable estate and interest and property right in the building and its appurtenances; and this interest and property right is entitled to protection in a court of equity. This interest and property right is in the nature of an equitable lien on the property, and it is superior to the judgment and execution of Edward T. Brown. Its rights in the property can be fully protected by having the property sold subject to plaintiff's lease contract and the rights of plaintiff flowing therefrom. The property, if sold subject to plaintiff's lease contract, will bring a price sufficient to pay in full, with costs, the judgment and execution issued thereon of the Metropolitan Life Insurance Co., and Gude. Plaintiff offers to execute a sufficient and satisfactory bond in such sum as the court may require, obligating plaintiff to find a purchaser of the property now advertised for sale, who will pay a sufficient sum therefor, when sold subject to the rights of plaintiff, to pay in full the judgments and executions of the parties named above, aggregating the sum of $855,481.31, together with any additional interest that may accrue thereon, and all costs of the sale; and the sale of the property as proposed by it will be in accordance with the principles of equity. The judgments and executions of the Metropolitan Life Insurance Co. and Gude will be paid in full, plaintiff's rights will be fully protected, and the

claims of judgment creditors which are subordinate to the rights of plaintiff will not be affected. If the sale is allowed to proceed as now advertised, the principles of equity will be violated, in that subordinate judgment creditors will acquire superior rights to plaintiff. The prayer is, that the sheriff be enjoined from selling the property on October 4, 1921, or thereafter until the further order of the court; that the Metropolitan Life Insurance Co. be enjoined from proceeding to have the property sold under the loan deed, or the judgment or execution thereon, until further order of the court; that Gude be enjoined from levying on and selling said property under his judgment or execution, until the further order of the court; that Edward T. Brown be enjoined from levying his judgment or execution upon the property, or from selling it under his executions, until the further order of this court; that the court render its decree adjudicating and directing that the property be sold, after due advertisement, under the execution of the Metropolitan Life Insurance Co., subject and subordinated to the rights of plaintiff under its lease contract, the decree to be conditioned upon plaintiff furnishing to the court a satisfactory bond as proposed in the petition, obligating plaintiff to furnish a purchaser for the property at a price that will insure the payment in full of the executions of the Metropolitan Life Insurance Co. and Gude; and for general relief, etc.

Blair & Company Incorporated, of the city of New York, filed its intervention as a defendant, and alleged, among other things, that on March 2, 1921, the execution of E. T. Brown, together with the judgment on which it was based, was duly transferred in writing by E. T. Brown to intervenor as security for an indebtedness in the principal sum of $250,000, as evidenced by a note dated October 21, 1918, as appears by a copy of the assignment attached to the intervention. Answering the petition, the intervenor for want of sufficient information neither admitted nor denied practically all of the paragraphs thereof. Intervenor admitted that the deed of Brown & Randolph Co. to the Metropolitan Life Insurance Co. was executed and recorded prior to the execution of the lease contract between Brown & Randolph Co. and plaintiff. It was further averred that the transferred judgment in favor of E. T. Brown against Brown & Randolph Co. was for a good and valuable consideration, and

was accepted by this intervenor in good faith, etc. The intervenor prayed, that the prayers of the petition be denied, that the injunction theretofore granted be dissolved, and that the sale of the property in due and orderly process under the original levy and advertisement be ordered to proceed to a conclusion.

E. T. Brown, Brown & Randolph Co., the Metropolitan Life Insurance Co., and Gude all filed demurrers and answers to the petition. On the hearing the court refused an interlocutory injunction, and revoked the restraining order theretofore granted. To this judgment the plaintiff excepted.

*Dorsey, Brewster, Howell & Heyman* and *Mark Bolding,* for plaintiff.

*Rosser, Slaton & Hopkins, Dean & Wright, Smith, Hammond & Smith, Napier, Wright & Wood, Jones, Evins & Moore,* and *Spalding, MacDougald & Sibley,* for defendants.

HILL, J. From the foregoing statement of facts it appears that Brown & Randolph Co. gave the Metropolitan Life Insurance Co. a deed to secure debt, which was a first lien on the property. Brown & Randolph Co. owned the property at Marietta and Forsyth streets. They employed A. V. Gude & Co. to construct the building known as the Transportation building on the property. In constructing the building Gude & Co. obtained a lien for work done and material furnished in its construction. Both of these claims are admittedly superior to the lease claimed by the Western Union Telegraph Co. Thereafter Brown & Randolph Co. leased a portion of the building to the Western Union Telegraph Co., for a minimum period of twenty years, with the right of two renewals of five years each. This gave the Western Union Telegraph Co. "the right to possess and enjoy the use of" the premises for the time fixed in the lease. Civil Code (1910), § 3691. The insurance company reduced its claim to judgment, and executed a deed to the Brown & Randolph Co., had it filed and recorded for the purpose of levy and sale, and the property was accordingly levied upon and advertised for sale. E. T. Brown, who owns practically all of the stock of the Brown & Randolph Co., entered into an agreement with A. V. Gude Jr., surviving partner of A. V. Gude & Co., by which the latter agreed to receive from E. T. Brown payment of their claim against the Brown & Randolph Co. in installments, and to transfer their

lien to Brown when Brown paid it up. E. T. Brown individually obtained a large judgment against Brown & Randolph Co. The E. T. Brown judgment was subsequent to the lease of the Brown & Randolph Co. to the Western Union Telegraph Co. The purpose of the petition was to compel the Metropolitan Life Ins. Co. and Gude to make their money out of the sale of this property, subject to the leasehold interest of the Western Union Telegraph Co., the latter company agreeing to make the property, when sold, bring enough to pay off the liens on the property superior to its leasehold interest; and to enjoin E. T. Brown from undertaking to sell the property under his fi. fa. for the purpose of claiming the proceeds thereof after payment of the superior liens, etc.

In *Field* v. *Howell,* 6 *Ga.* 423, this court held: "When one buys land at a sheriff's sale, upon which there is a lease from the defendant in execution, older than the judgment, and at the time of the sale the lessee has not entered into possession, he buys it subject to the right of entry and user under the lease." And see 4 Kent's Com. 96, 97; Bac. Ab. Title Leases, M.; Coke Litt, 46, 270; Shep. Touch., by Preston, 267; 2 Bl. Com. 143, 144.

In *Semmes* v. *Moses,* 21 *Ga.* 439, the headnote is as follows: "A deed of trust being taken on a variety of property to secure the payment of a bond debt, and a portion thereof having been sold to satisfy a judgment at law, under notice at the time that it was sold subject to the trust lien, and the trustee having proceeded afterwards to resell the property so purchased, without exhausting first that which remained undisposed of in the hands of the debtor: *Held,* 1. That the whole of the property included in the trust deed is to be regarded as subject to the amount of money due upon the bond debt. 2. That if the property sold brought what it was fairly worth, then it should not be distributed until the balance of the property embraced in the trust deed be sold. 3. Then should there still be a deficiency, the property first sold must make up the difference. 4. If the property sold would, at its fair worth to be ascertained at the time of sale, in addition to what has already been paid for it, extinguish the bond debt, then it shall bear the whole burthen of discharging that indebtedness. 5. If, however, at its fair worth, it would fall short of satisfying the outstanding encumbrances, then the property unsold should contribute its pro rata proportion of said lien."

The Civil Code (1910), § 5506 provides that " For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." We are of the opinion that the plaintiff here has a right; and having that right, the court may frame a remedy which will do equity between all of the parties. The Civil Code (1910), § 4519, also provides: " Equity jurisdiction is established and allowed for the protection and relief of parties, where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrongs, or relieving for injuries done." We are of the opinion that this equitable principle is applicable to a situation like the present, where a plaintiff, which has superior right to some of the judgment creditors, would have those rights destroyed under the rules of the common law, unless a court of equity intervened.

In *Cumming* v. *Cumming*, 3 *Ga.* 460, 469, it was held: " A mortgagee can not enforce his mortgage against the property of a subsequent purchaser, as long as there is other property of the mortgagor remaining, sufficient to satisfy the mortgage debt. He can resort to the property sold only for what remains unpaid of his claim after the other mortgage estate is exhausted." In delivering the opinion of the court Lumpkin, J., said: " It is conceded that where there is a lien upon different parcels of land for the payment of the same debt, and some of those lands still belong to the person who in equity and justice owes and ought to pay the debt, and other parcels of the land have been transferred by him to third persons, his part of the land, as between himself and them, shall be primarily chargeable with the debt. Gill *vs.* Lyons, 1 Johns. Ch. R. 447; Stoney *vs.* Shultz, 1 Hill Ch. R. 500; Commercial Bank of Erie *vs.* Western Reserve Bank, 11 Ohio (Stanton) R. 444; Hartley *v.* O'Flaherty, Lloyd & Gould R. 216; Temp. Pl. 19." And see other cases cited by the learned judge in this well-considered case. And see also the case of *Craigmiles* v. *Gamble*, 85 *Ga.* 439 (11 S. E. 838), where the *Cumming* case is cited and approved. The *Craigmiles* case was not one where the subsequent owner of the property was endeavoring to prevent its sale, but one where the property was allowed to go to sale; and the question arose on the distribution of the proceeds of the sale. This case is authority, in effect, for the proposition that the plaintiff should

first exhaust the property of Brown & Randolph Co. after carving out the leasehold estate of the plaintiffs.

In the case of *Merchants National Bank of Rome* v. *McWilliams,* 107 *Ga.* 532, 535 (33 S. E. 860), this court held: " When property is sold and conveyed by a common grantor at different times and to different purchasers, and taxes having a lien on all the property sold are due, the last property sold is primarily bound for the payment of all such taxes." In the opinion of the court it was said: " This may be a hard and oppressive law, but the principle upon which it is based is, that, where one has purchased from another and paid value for property, so long as other property is owned by the grantor, such property should on equitable principles be first applied to the payment of the debts of the grantor, and where liens exist on all of it, that the lienors must make the money for which they have a lien out of the property owned by their grantor, before proceeding against that in the hands of the grantees, for which the latter have paid value, thus making the debtor pay claims against him out of his own property in preference to that belonging to others. . . When one purchases property .from another in good faith for value, a debt against the grantor can not ordinarily be enforced against the property purchased; but when there is an existing lien on the property purchased, as well as other property of the debtor, the enforcement of the lien should, under plain principles of justice, first be directed to the property which the grantor retains." See also *Askew* v. *Scottish Am. Mort. Co.,* 114 *Ga.* 300, 302 (40 S. E. 256), where the same principle is recognized. The general principle is stated in 18 R. C. L. 456, in the following language: " The general principle on which courts of equity interfere in these cases with the strict legal rights of the prior lienholder, etc., is that, without such interference, he whose interests are prior would possess an unreasonable power of defeating the rights subordinate to his, by satisfying his claim to the exclusion of the junior claimants, so that in fact it would be entirely in his election whether they should receive any satisfaction or not. Now courts of equity treat such an exercise of power as wholly unjust and unconscientious, and therefore will interfere, not indeed to modify or absolutely destroy the prior lienholder's power, but to prevent it from being made an instrument of caprice, injustice, or imposition." And the

same author, discussing the doctrine of marshaling assets and securities, the principle of subjecting lands to debt in the inverse order of alienation, on page 470, uses this language: " Although the equity now under consideration and the equity to marshal assets have a certain similarity, the two are quite distinct. The equity of the purchaser of a part of a tract of land subject to a lien, to have the lien satisfied out of the land remaining in the grantor and then out of the parcels subsequently conveyed in the inverse order of their alienation, is, when it exists at all, a fixed, indefeasible right. It is therefore superior to the equity to marshal assets, which, until it is asserted, is a mere inchoate equity subject to displacement by a subsequent conveyance or by a contractual lien afterwards attaching. The indefeasibility of the equity of the purchaser against his grantors rests on the relation existing between them, which relation had its origin in contract, and on the fact that the subsequent purchaser has notice of the lien covering the tract and of all prior conveyances of the parcels out of the tract. As has already been seen, it is the lack of notice to subsequent grantees of encumbrances which makes the equity to marshal assets a defeasible one." In support of the above proposition the case of Newby v. Norton, 47 L. R. A. (N. S.) 302 (90 Kan. 317, 133 Pac. 890), was cited. See also 4 Pom. Eq. Jur. (3d ed.) § 1414; 10 Am. & Eng. Enc. L. 1256; 26 Cyc. 927.

We reach the conclusion that the plaintiff is entitled to the relief prayed for, and to have the property in controversy sold in such manner as to protect the superior liens of creditors, and also the leasehold interest of the plaintiff in error, as well as the junior creditors, if the property brings enough for that purpose. We do not mean to hold, if the plaintiff should pay off or tender the amounts due to owners of the superior liens, and they should refuse to accept it, that injunction should not be granted.

We are of the opinion that under the principle ruled in the above authorities, the Western Union Telegraph Company has an equity in the property in controversy, which can be enforced; and that the holders of the superior liens should be required to sell the property subject to the leasehold interest of the Western Union Telegraph Company. We are also of the opinion that the sale under the E. T. Brown judgment, and execution based thereon,

should be enjoined, with provision for its payment out of the excess, if any, of the proceeds of the sale of the property after the payment of the superior liens above referred to. Undoubtedly the lien of the E. T. Brown judgment, or his assignee thereof, is inferior to the leasehold interest of the Western Union Telegraph Company. *Field* v. *Howell,* supra. And the purchaser of the property at a sale under this fi. fa. would take it subject to this lease. A purchaser at the sale under the superior lien would assume the place of landlord of the lessee company (Western Union Tel. Co.), and would be entitled to the rents. *Morrow* v. *Sawyer,* 82 *Ga.* 226 (8 S. E. 51).

The Civil Code (1910), § 6029, provides: "Where property is subject to a lien and part of it is sold by the debtor, the part remaining in him should be first applied to the payment of the lien. If the property subject to such lien is sold in several parcels at different times, the parcels should be charged in the inverse order of their alienation." And see *Craigmiles* v. *Gamble,* supra. In the instant case Brown & Randolph Co. leased to the Western Union Telegraph Co. certain portions of the building which was subject to the above prior liens. By analogy to the above code section the property should, first, be sold subject to the lease, and the proceeds applied to the superior lien. The lien of the E. T. Brown judgment and execution, being inferior to the leasehold interest of the Western Union Telegraph Co., should only be allowed to participate in any excess of the proceeds of the property after the prior liens are paid off and discharged. We are therefore of the opinion that where the owner of property has incumbered it with a security deed, and thereafter leases it or portions of it to a third person, the grantee in the deed will be required, in a proper case, to sell such property in the first instance subject to the lease, when such sale will fully pay off and discharge his demand, and when to permit a sale otherwise would destroy and wipe out the lease.

From what has been said above we conclude that the interlocutory injunction should have been granted as prayed for, the plaintiff having offered to enter into bond with good security to be approved by the judge or clerk of the court below, payable to the Metropolitan Life Insurance Co., or its assignees, and to A. V. Gude Jr., surviving partner of A. V. Gude & Co., or his as-

signees, conditioned to make the property, when sold, bring a sufficient sum to pay off the liens in favor of the insurance company and Gude & Co., with all expenses of the proceedings, or to pay the full amount of their claims.

By what we have said above, we do not mean in any way to destroy or impair the effect of security deeds and the full rights and legal priority of the grantees therein, under the Civil Code (1910), § 3306 et seq. We fully recognize and intend to preserve the rights of the insurance company under its security deed.

We have not overlooked and do not mean to question the principles of law set forth in the Civil Code (1910), §§ 1177, 4914(6), 6056, 6073, 6075. These principles apply to sales by sheriffs under common-law process, and are not in any way affected by the decision we make in this case.

Ordinarily junior creditors and claimants of property incumbered by a security deed have an adequate remedy at law to claim the funds arising from the sale of such property under such security deed, by rule against the sheriff to distribute the fund arising under such sale, and are not entitled to equitable relief in asserting their rights to such fund (Civil Code (1910), § 6037; *Rucker* v. *Tabor,* 133 *Ga.* 720 (66 S. E. 917) ); but in this case the plaintiff is seeking to preserve its right to possess and enjoy the premises leased by it, and is not seeking to assert any claim to the fund arising from the sale of the Transportation Building under the security deed of the insurance company. This right it cannot assert at law, but can only do so in a court of equity.

We have not overlooked the decision in the case of *Mattlage* v. *Mulherin,* 106 *Ga.* 834 (32 S. E. 940). We fully recognize the principle of law laid down in that case. When property has been conveyed by a grantor to secure a debt, and the grantee in the security deed reduces his debt to judgment and files a quitclaim deed for the purpose of levy and sale, and the property is sold by the sheriff under the levy of the execution issued on such judgment, the lessee from the grantor under a lease junior to the security deed can at law be dispossessed by the sheriff for the purpose of placing in possession the purchaser of the property at such sale; and this may be done notwithstanding the fact that the lease is older than the judgment, when it is junior to the security deed. We hold the grantee can do so in this case, if this

16

is necessary to pay his debt. The lessee concedes the superior rights of the insurance company and of Gude & Co., and we recognize these rights and this power of the senior lienholders. What we hold is, that in equity these senior lienholders should exercise this power so as not to destroy the lease of the plaintiff, unless it becomes necessary to do otherwise in order to pay them in full. After the sale of the property under the judgment of the insurance company, the lease of the plaintiff would be terminated and destroyed, and it would lose the valuable improvements which it put upon the premises leased by it from the grantor in the security deed. If the rights of the senior lien-holders can be fully protected, so that they will get every cent coming to them, and at the same time the rights of the plaintiff under its lease can be protected, a court of equity will require the grantee in the security deed and the senior judgment creditor to so exercise their power under the senior liens as to save the rights of the lessee.

We have not overlooked the decision in *Garrison* v. *Parker,* 117 *Ga.* 539 (43 S. E. 849), which holds that the grantor under a security deed, notwithstanding rendition of the judgment against him on the debt thereby secured, can lawfully let the same to a tenant for years or at will, the tenant, however, taking the lease to the premises subject to the right of the grantee in the security deed of terminating its existence by enforcement of the judgment by the sale of the land embraced in the security deed. This is a general principle applicable at law, and is sound law. In the instant case the lessee took its lease subject to the security deed, and at law the creditor under such security deed, after obtaining judgment on its deed, can terminate the existence of the lease by sale of the property. In equity, however, though it has this right under our statute, the right of the junior lessee will be protected, if that can be done by giving full effect to all the legal rights of the holder of the security deed.

We do not mean to say that the grantee in the security deed will be required to sell a portion of the building embraced in its security deed, or be required to levy upon a portion of the property therein embraced. We uphold the right of the creditor to sell the property as a whole, but subject to the lease of the plaintiff, when by so doing the secured creditor will be paid in full, and at

the same time the rights of the lessee be preserved. We have not overlooked, and do not mean in any way to question, the doctrine laid down in *Brewer* v. *New England Mortgage Security Co.,* 144 *Ga.* 548 (87 S. E. 657), and kindred decisions. Nothing in this opinion militates against the rights of grantees under security deeds. We do not mean to destroy one " jot or 'title " of the law in reference to the creation and effect or the rights of grantees in security deeds.

Under the material allegations of the plaintiff's petition, which do not seem to be disputed, the property involved in this litigation should be sold under decree of the court providing for its sale subject to the leasehold interest of the plaintiff; and if under such sale the property brings enough to pay off the senior incumbrances and the expenses of the sale, then the property should be conveyed to the purchaser subject to the lease; but the decree should provide that if, when so sold, the property does not bring enough to pay off the senior incumbrances and the expenses of the sale, then the property should be again offered for sale at once, and sold free from the lease of the plaintiff, and title made to the purchaser to the entire interest in the property.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Atkinson, J., dissenting. Gilbert, J., concurs in the judgment.*