## ANTHONY SHOALS POWER COMPANY *v.* FORTSON.

1. An oral lease not naming any term, but limited to endure until the happening of a contingency, creates a tenancy at will.
2. If subsequently the landlord accepts from the tenant the latter's rent note for a definite term, containing a complete and certain agreement for the rent of the same land, and embracing covenants not included in the oral lease, the prior oral contract will be presumed to have been superseded and merged into the writing.

3. There was evidence authorizing an inference that the landlord had contracted for the rent of the land for the year 1912.

4. Injunction is an available remedy to restrain a landlord from interfering with the possession of his tenant pending the tenancy, where the damages are of such a nature as to be incapable of accurate computation.

AUGUST 13, 1912.

Injunction. Before Judge Walker. Wilkes superior court. January 15, 1912.

*Thomas J. Brown* and *W. A. Slaton,* for plaintiff in error.

*Samuel H. Sibley* and *I. T. Irvin Jr.,* contra.

EVANS, P. J.  The plaintiff, C. J. Fortson, brought his petition against the Anthony Shoals Power Company and certain other defendants, praying an injunction against interfering with his possession of certain lands.  He alleged, that the power company owned a large tract of land, on which was an undeveloped waterpower; that in October, 1909, the power company agreed with him that he should rent the entire land, as long as the same was not flooded by the erection of a dam, at a price of 34,000 pounds of lint-cotton per year for each year that he was suffered by the non-erection of the dam to occupy the land, the company having a right at any time to erect the dam and flood the land; that he was to have the right to make such improvements thereon as he wished, at his own risk of loss thereof by the erection at any time of the dam, and to sublet the premises; that in pursuance of this contract he entered upon the land, and for each of the years 1910 and 1911 he gave his rent notes, which had been paid; that on October 10, 1911, in pursuance of his contract he gave to the power company his note, for the year 1912, for 34,000 pounds of lint-cotton; that on the faith of his contract he erected valuable improvements; that the defendants had denied him the right to rent the lands for the next year (1912), had informed his tenants that he had no right to the possession of the farms for the next year and that they would not be permitted to occupy them, and had stopped his tenants from erecting improvements which they had contracted with him to construct.  The power company denied the alleged contract of 1909, averred that it had rented the land to the plaintiff in 1910 and again in 1911, and denied having rented the land for the year 1912.  It averred that the plaintiff had cut timber during the years 1910 and 1911 in violation of his contract;

and that unless the plaintiff vacated the premises on the expiration
of his term, it would be compelled to take proper proceedings to
evict him.   On the interlocutory hearing the defendants were tem-
porarily restrained as prayed, provided the plaintiff deposited with
the clerk rent notes taken by him for the year 1912 to the extent
of 35,000 pounds of lint-cotton.   Exception is taken to this order.

The tenant's contention is that the landlord made a parol lease
of the land to him, to continue until it was flooded, and that in
successive years he gave his rent notes in pursuance of the parol
contract.   The duration of the tenancy by the express terms of the
parol agreement depended on a contingency.   Such a lease, not
naming any term, but limited to endure until the happening of a
contingency, can not properly be regarded as a lease for years.   1
Tiffany on Landlord and Tenant, § 12.   And even if it could be
construed as a lease for longer than a year, the contract, being in
parol, has only the effect to create a tenancy at will.   Civil Code,
§ 3693.   As the term is indefinite and can not extend beyond a
year solely by vigor of the parol agreement, the plaintiff sustained
the relation of a tenant at will.   The statute provides for notice
to terminate a tenancy at will, and the stipulation that the tenant
should rent the land as long as it was not flooded assured to the
landlord the right to terminate the tenancy by flooding the land
without giving the statutory notice.   The subsequent execution by
the tenant to the landlord of a rent note wherein the contract of
tenancy appears to be fully integrated, and which contains ad-
ditional covenants to those included in the parol contract, impels a
conclusion that the prior parol agreement was merged into the writ-
ing.   The rent note for the year 1911 contained full specifications of
a lease contract.   It specified that the note was given for the rent
of the Anthony Shoals land, and contained covenants by the tenant
to pay rent, to keep the premises in repair, to cultivate the land
in a farmlike manner, to permit no waste, or cutting of timber
save for the ordinary requirements of the farm; a liability for
waste to the value of the depreciation to be collected as rent.   It
was stipulated that the payee was not to be liable for repairs, that
if he or his principal determined to go forward with the con-
struction of a reservoir, he or they might go upon the land and
remove any timber, earth, or other thing, without becoming liable
for damages or a reduction in rent, and that the crops should be

removed by the tenant not later than November 15th of that year, at the direction of the payee or his principal. No copy of the rent note for 1910 is found in the record, but the parol testimony indicates that it was substantially of the same nature.

Ordinarily a promissory note contains only the maker's obligation to pay. If the note does not purport to express the contract in pursuance of which it is executed, and that contract rests in parol, its terms may be proved by parol. *Pryor* v. *Ludden & Bates,* 134 *Ga.* 288 (67 S. E. 654, 28 L. R. A. (N. S.) 267). But where a tenant gives a rent note to his landlord, embracing and reciting a complete and certain agreement of the terms of the lease contract, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the entire contract. *Bullard* v. *Brewer,* 118 *Ga.* 918 (45 S. E. 711). Having reduced their contract to writing, all prior oral negotiations and agreements pertaining to the same subject-matter are merged into the writing and superseded by the writing. *Weaver* v. *Stoner,* 114 *Ga.* 167 (39 S. E. 874). It follows, therefore, that the written contract as embraced in the rent note of 1911 superseded the alleged oral contract made in 1909.

In the fall of 1911 Fortson executed to the power company a rent note for the year 1912, and delivered it to the president of the power company. There is a dispute concerning the circumstances under which this note was delivered. The power company insists that the note was left with its president until it could be submitted to its general manager for approval; that it was submitted, and the general manager declined to renew the rent contract, and the note was returned to Fortson on November 10th by mail. Fortson immediately sent the note back to the president. Fortson contends that the general manager approved the rent contract for the year 1912, and afterwards attempted to repudiate it because of some disagreement about the collection of the rent of 1911. The evidence was sufficient to authorize the judge to find that there existed a contract of rental for the year 1912.

This brings us to the question of the remedy of injunction. If a landlord enters into a valid contract to rent his land, with the right to sublet it, and afterwards, in an attempt to repudiate his contract, he interferes with the tenant's possession, so as to prevent him from exercising his privileges under the contract, and the

tenant's damages are incapable of ascertainment, equity will enjoin the landlord from so doing. There was evidence to authorize a finding of these facts; and accordingly there was no abuse of discretion in granting an interlocutory injunction.

The Chief Justice and Mr. Justice Atkinson concur in the judgment as based on the last three headnotes.

*Judgment affirmed. All the Justices concur.*