EHRLICH *v.* TEAGUE *et al.*

No. 17878. Argued May 12, 1952—Decided June 9, 1952.

*Maurice Steinberg* and *Hull, Willingham, Towill & Norman,* for plaintiff in error.

*Congdon, Harper & Leonard,* contra.

ALMAND, Justice. The petition of the lessee, in so far as it seeks injunctive relief against the lessors' instituting dispossessory proceedings, does not state a cause of action, for the reason that the lessee has an adequate remedy at law; and if, as he contends here, there has not been a forfeiture of the lease by his failure to pay or tender the monthly rental, such fact would constitute a good defense to a dispossessory proceeding. If the petition states a cause of action, it must be upon other grounds, such as (1) to prevent a multiplicity of suits or irreparable injury; or (2) to compel specific performance.

■ It is contended that equity should intervene in this case to avoid a multiplicity of actions, and save the lessee from suffering irreparable damages. The allegations in the petition as to avoidance of a multiplicity of actions are: "That although these defendants would be unable to enforce a dispossessory warrant if they sued out one against your petitioner, or his sublessees, such dispossessory proceeding would result in a multiplicity of actions, which could be avoided if the court would take jurisdiction of this petition and adjudicate the rights of all the parties involved." "That if said defendants are allowed to sue out a dispossessory warrant against your petitioner and his sublessees, [they] will inevitably become involved in a multiplicity of actions and litigation, all of which can be prevented if the court will assume jurisdiction of this action and pass upon the issues set out herein."

While avoidance of a multiplicity of actions may in a proper case authorize the intervention of equity, it alone does not create an equitable cause of action regardless of other considera-

tions. *Voyles* v. *Federal Land Bank of Columbia*, 182 *Ga.* 569 (186 S. E. 405). The multiple actions that the lessee refers to are the possible maintenance of four dispossessory-warrant proceedings against the lessee and the three sublessees. Though the demand for possession of the premises by the lessors was addressed to all the lessees jointly and severally, there is no allegation that the lessors will, unless enjoined, institute four separate actions. One dispossessory proceeding only is necessary to determine the question whether the lessors are entitled to the possession of the premises by reason of nonpayment of the rent, and in such proceeding the lessees and the sublessees may be made parties defendant. *Fletcher* v. *Fletcher*, 123 *Ga.* 470 (1) (51 S. E. 418). The allegations of the petition are insufficient to authorize a court of equity to restrain the threatened action by the lessors on the ground of avoiding a multiplicity of actions.

The allegations in the petition as to irreparable damages are as follows: "That on or about January 10, 1952, these defendants wrote and mailed a letter marked Exhibit 'C' and attached hereto . . not only to your petitioner but to your petitioner's sublessees, causing your petitioner's sublessees much anxiety, concern and worry, and causing your petitioner embarrassment and causing irreparable damage to his heretofore friendly business relationship with his sublessees." "That if said defendants are allowed to sue out dispossessory warrants or are allowed to continue to write your petitioner and his sublessees threatening letters concerning your petitioner's right to the use and occupancy of the premises in controversy, your petitioner will suffer added embarrassment, humiliation, mental anguish and worry, and your petitioner's relationship with his sublessees will further deteriorate, and your petitioner will suffer irreparable damages and your petitioner has no adequate remedy at law," and "your petitioner and his sublessees will suffer damages of such nature as to be incapable of accurate computation."

The allegations as to embarrassment, humiliation, and mental anguish and worry on the part of the lessee and his sublessees are insufficient to show irreparable injury. *Lenoir* v. *Hamlin*, 174 *Ga.* 793 (164 S. E. 201). There are no allegations that the sublessees, on account of the notice given by the lessors to

vacate, are moving out, or that they have even threatened to cancel their leases. If, as the lessee contends, he has paid or made a lawful tender of the rent, this would be a matter of defense to a dispossessory action. If the lessee prevails in such an action, he and his subtenants will still be in possession. If he does not prevail, he and his subtenants will have to vacate the premises. As far as damage or injury to the lessee is concerned, he is in the same position whether the issue as to payment or nonpayment be tried in a court of equity or in a court of law. If a court of equity takes jurisdiction, the subtenants would stay in possession, until trial by a jury, by a writ of injunction. If the issue is tried in a court of law, they can stay in possession by the filing of a counter-affidavit and giving of a bond. The lessee and his subtenants being thus adequately protected in a proceeding at law, there is no cause for enjoining that proceeding. Code, § 55-103; *Flynn* v. *Merck*, 204 *Ga.* 420 (49 S. E. 2d, 892); *Hall* v. *Johnston*, 206 *Ga.* 843 (59 S. E. 2d, 382). The cases relied on by the plaintiff (*Anthony Shoals Power Co.* v. *Fortson*, 138 *Ga.* 460, 75 S. E. 606; *Reeve* v. *Hicks*, 197 *Ga.* 181, 28 S. E. 2d, 649; *Deriso* v. *Castleberry*, 202 *Ga.* 174, 42 S. E. 2d, 356), on the question of irreparable damages, have been examined. In all of those cases there were allegations of illegal and unwarranted interference by the lessor or his agent with the peaceable use and physical possession of the premises by the lessee or his subtenants. None of those cases involved an effort on the part of the lessee to enjoin the lessor from instituting dispossessory proceedings. The facts alleged in the instant petition are insufficient to show that the lessee will suffer irreparable damages unless a court of equity intervenes.

■ We are of the opinion that the petition did not set forth a cause of action which would authorize a decree of specific performance of the option to renew the lease. Under the lease agreement, the lessee was granted an option to renew, and not extend, the lease, for one year beginning March 15, 1952, and this privilege to renew and not extend the lease could be exercised by the lessee giving a reasonable notice of such intention at least 30 days before the expiration of the term, which was March 15, 1952; and the lessee, in order to obtain the benefit

of the option, was required to act in the manner provided in the option to obtain a new contract. See *Citizens Oil Co.* v. *Head*, 201 *Ga.* 542 (40 S. E. 2d, 559). The lessors were obligated, under the option, to renew the lease on March 15, 1952, for a period of one year, after receiving notice from the lessee not less than 30 days prior to March 15, 1952, of his intention to renew. The option contemplates that the lessors would renew the contract, by a new lease, for an additional year. *Hamby & Toomer* v. *Georgia Iron & Coal Co.*, 127 *Ga.* 792 (56 S. E. 1033); *Candler* v. *Smyth*, 168 *Ga.* 276 (147 S. E. 552); *Walker* v. *Brooks Simmons Co.*, 44 *Ga. App.* 470 (161 S. E. 659). The notice of intention to renew for a term of two years was given by the lessee on January 10, 1952. This action to compel the lessors to specifically perform the option agreement was filed on January 18, 1952. Since the lessors were under no obligation to renew the lease until March 15, 1952, it is apparent that the action seeking to compel specific performance was premature. When the lessors notified the lessees of the termination of the lease on January 10, 1952, the lessee had the choice of two remedies: (1) to accept the notice as an anticipatory breach of the agreement to renew; or (2) to treat the lease as remaining of force until the time to exercise the option, and then, after notice and failure of the lessors to renew, to sue for specific performance. *Ford & Co.* v. *Lawson*, 133 *Ga.* 237 (5) (65 S. E. 444); *Crosby* v. *Georgia Realty Co.*, 138 *Ga.* 746 (1) (76 S. E. 38); *Gilleland* v. *Welch*, 199 *Ga.* 341 (2) (34 S. E. 2d, 517). This ruling is not contrary to what was held in *Kaplan* v. *Krantz*, 202 *Ga.* 194 (42 S. E. 2d, 371). There, on October 16, 1945, the defendant sold to the plaintiff a stock of merchandise, and gave to him a written option to lease a building for a term beginning on August 5, 1946. The contract provided: "Time is the essence of this contract, and should the purchaser desire to exercise this option, to execute said lease, this option must be exercised within six (6) months from date. *It is further agreed that upon the exercise of said option the . . [defendant] and the purchaser shall execute such legal instruments as are necessary to carry out the terms of said lease agreement.*" (Italics ours.) On March 21, 1946, the plaintiff in writing advised the defendant of his exercise of the option. On May 31,

1946, the defendant informed the plaintiff that he would not lease the premises to him. The plaintiff instituted an action for the specific performance on June 21, 1946. The defendant contended that the action was premature, since the term of the lease did not begin until August 5, 1946. In denying this contention, this court held that, upon exercise of the option, the date for performance under the contract on the part of the defendant became fixed as of that date. In that case, the contract fixed the time of performance on the part of the lessor as being the date the option was exercised. In the instant case, the time for performance on the part of the lessors was at the time of the expiration of the year's lease, and not at the time they received notice of the lessee's exercise of the option. Whether the notice of the exercise of the option, as given by the lessee, was in accordance with the contract, or whether the lessee was required to tender the first month's rent, in order to exercise his option, are questions not before us, and no rulings are made on these contentions. The question of whether or not the lessors have by their previous conduct waived their right to insist that the rent be paid at the beginning of each rental month is not now before us, and we make no ruling as to that matter.

There was no error in sustaining the general demurrers to the petition and dismissing the same.

*Judgment affirmed. All the Justices concur, except Atkinson, P.J., not participating.*